STANLEY MAGIC-DOOR, INC., Plaintiff-Appellant, v. THE CITY OF CHICAGO et al., Defendants-Appellees.

First District (4th Division)    No. 81-1021

Opinion filed February 4, 1982.

Maurice J. McCarthy, of Chicago, for appellant.

Daley and George, of Chicago (John J. George and Timothy J. Joyce, of counsel), for appellees.

JUSTICE ROMITI delivered the opinion of the court:

Plaintiff, the second lowest bidder on a city contract, filed a declaratory judgment action seeking a declaration that the city of Chicago awarded the contract to an ineligible bidder. Initially the trial court dismissed the suit for want of standing and because the complaint was based on information and belief. This court reversed and remanded in *Stanley Magic-Door, Inc. v. City of Chicago* (1979), 74 Ill. App. 3d 595, 393 N.E.2d 535. Thereafter, after full discovery, both sides filed motions for summary judgment. The trial court denied plaintiff's and granted defendant's motion. We affirm.

The questions in issue under the particular circumstances of the case are set forth in and limited by the allegations set forth in plaintiff's

complaint which is binding on the plaintiff. Plaintiff alleged that on April 22, 1977, the city of Chicago opened bidding on a five-year contract for the maintenance of the automatic doors at the two principal Chicago airports (O'Hare International and Midway). The contract defined a qualified bidder as follows:

"Bidders shall be familiar and experienced with, and regularly engaged in the maintenance, installation repairing, and servicing of automatic doors and related equipment of type and design similar to the equipment covered under this contract. Bidders shall be required to provide proof of having successfully maintained an amount of equipment equal to three times in number, the equipment covered under this Contract within the last five years. No bidder will be considered acceptable in the consideration of award of this work unless he shall have already in force and operating, the following elements of a maintenance procedure to insure regular coverage of all preventive maintenance operations and possible sources of operating troubles [elements omitted]."

Plaintiff was a qualified bidder as defined by the contract. Plaintiff was the second lowest bidder. The contract was awarded to Builders Chicago Company, which submitted the lowest bid. Plaintiff alleged that Builders was not a qualified bidder as defined by the contract in that Builders had at no time within the last five years maintained any equipment other than the equipment covered by the contract. Plaintiff further alleged that Builders had not successfully maintained said equipment in that there were legal actions pending against the city based on the defective maintenance of the equipment.

As previously mentioned the complaint was originally dismissed by the trial court for want of standing and because the complaint was based on information and belief. This court reversed the trial court on both issues. This court remanded the case to the trial court, noting that the city had not denied Builders was not a qualified bidder and that "[b]ecause discovery has not yet been obtained, the evidence has not yet been developed to the degree necessary to permit this court to determine if this is an area where the city may properly exercise its discretion in determining who is a responsible bidder * * * or whether specific nondiscretionary requirements set forth by statute, ordinance, regulation or bid specification must be complied with, and if they must, whether there has been such compliance." 74 Ill. App. 3d 595, 599, 393 N.E.2d 535, 538.

After remand, the city and Builders filed their answers in which they denied that Builders was not a qualified bidder. Full discovery was had by plaintiff. Thereafter both sides filed for summary judgment; the defendants' motion was granted.

## I

In its complaint one of the two bases for plaintiff's contention that Builders was not a responsible bidder was that lawsuits for personal injuries arising out of defective maintenance had been filed against the city. This point has not been raised on appeal and therefore is waived. (84 Ill. 2d R. 341(e)(7).) We do note, however, as the trial court did, that there was nothing in the bid specifications requiring an absence of lawsuits. In any event, at best such suits would only be some indication of the success or lack of success with which the doors had been maintained in the past.

The only other issue raised in the complaint was whether since Builders had serviced only the doors at the two airports over the last five years, it had maintained "an amount of equipment equal to three times in number, the equipment covered under this contract within the last five years." Plaintiff contends that the number of doors could not properly be counted three times although they had been maintained by Builders for several years. Plaintiff also contends in its brief that proof of compliance was not properly submitted because the only proof of Builder's work was in a letter submitted not with the bid but two weeks after the bids were opened.

The evidence in the record discloses that the equipment covered by the contract was 583 units. Builders maintained at the airports 289 units in 1972, 297 units in 1973, 585 units in 1974, 561 units in 1975, and 579 units in 1976. In March 1977 the contract for the maintenance of the doors from April 1977 to March 31, 1982, was announced and bids solicited. The due date of the bids was April 22, 1977. On March 30, 1977, Builders wrote the city's purchasing agent and asked if it was considered to be a qualified bidder. It pointed out that it had had a series of contracts for this maintenance work for the past seven years. The letter further stated that "in previous conversations and meetings with your Department, the Department of Aviation and C. F. Murphy and Associates [which drew up the specifications] it was established and agreed upon by all parties present, that we were performing above and beyond the scope of the existing contract and specifications for the maintenance of these doors at O'Hare Field." The purchasing agent replied by letter on March 31 agreeing that Builders had been performing in a very satisfactory manner and the city would like to see the company bid on the contract. Builders in submitting its bid did not set forth in the bid the information as to the number of doors previously worked upon. Plaintiff immediately protested the award to Builders, contending Builders had not maintained the proper number of doors. Thereafter in a letter to the purchasing agent dated May 5, 1977, Builders did set forth these numbers, pointing out that if the agent wished to take 1972 through 1976 inclusive, Builders had

maintained 2,317 units. Builders also reminded the purchasing agent of the correspondence of March 30 and 31. On May 13, 1977, Russ B. Dhondy of C. F. Murphy and Associates wrote the purchase agent stating that their interpretation of the clause was that "the amount of equipment covered under this contract is a total of 583 units. In order for a bidder to be qualified, he has to show that he has successfully maintained a minimum of 1749 units (583 x 3) within a period of the last five years."

■■ We agree with plaintiff that the specification could be interpreted to require the maintenance of 1749 different units during the five year period. But, particularly since the specifications did not expressly require that 1749 different units be maintained, although it would have been easy to so provide, the city's interpretation that the same units could be counted each year is also proper. Under the contract the purchasing agent was given the power to interpret the contract. While this would not give him the power to ignore or alter clear and unambiguous provisions of the contract, his construction here in favor of Builders was reasonable and authorized. Any other interpretation would be contrary to the intentions of the parties since it is clear from the evidence that Builders had been doing the work to the satisfaction not only of the city and the Department of Aviation but also of the company which drew up the present specifications. It would be unreasonable to find that, under those circumstances, those entities would intentionally draw up specifications which would exclude a company with which they were pleased and which they wished would bid on the new contract.

■■ The plaintiff's contention that the award is void because Builders only submitted proof of compliance after the bid was opened is also without merit. It is true that Builders' letter of May 4 setting forth its prior experience was written after the bids were opened. And it was established in *Leo Michuda & Son Co. v. Metropolitan Sanitary District* (1981), 97 Ill. App. 3d 340, 422 N.E.2d 1078, that a bid may not be corrected to make it responsive after the bids have been opened and it would be improper to permit a bidder to submit required forms after the close of bidding. This, however, was not done here. The specifications merely required the bidder to provide proof of having successfully maintained the required amount of equipment. There was no requirement as to the form the proof had to take. Here the city and its purchasing agent had full knowledge at the time of the close of the bidding, as evidenced by the correspondence of March 30 and 31, that the specifications had been met. Under section 8—10—11 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 8—10—11), the purchasing agent could properly take into account past records of transactions with the bidder. At most, Builders' failure to set forth in its bid its work experience already known to the purchasing agent was an informality in the bid which under the contract the agent was

entitled to disregard. Unlike *Michuda*, any delay in submitting a written summary of experience did not create an unfair advantage. In *Michuda* the construction company was permitted to file, after the close of bidding, a document regarding affirmative action goals. This meant, as the court pointed out, that that company, unlike the other bidders, was able to negotiate with minority subcontractors with knowledge that it had submitted the apparent low bid. In this case, however, there was no way Builders could alter its past experience or benefit by the delay in submitting formal written proof.

## II

■█ In its brief plaintiff also contends that Builders was not a qualified bidder because various other documents required by the specifications were not submitted with the bid, namely, a disclosure of ownership interests form, a contractor's financial statement and contractor's experience questionnaire dated not earlier than January 1 of the current year (1977), insurance policies or certifications and a "Program of Preventive Maintenance." As to the disclosure of ownership, Builders did submit a blank disclosure of ownership interests form with the words "as previously submitted" written over it. We agree with the trial court that this is sufficient since Builders had previously been a party to contracts with the city and had previously filed ownership affidavits with it. The specifications do not actually require the submission of a document showing a program of preventive maintenance. Rather, the specifications provide that no bidder will be considered acceptable unless he shall already have in force and operating specified elements of a preventive maintenance program. And finally the contract only provides that failure to submit a contractor's financial statement and experience questionnaire *"may* be" cause for rejection of the bid. More importantly, however, none of these contentions were raised in plaintiff's complaint. As stated in 2 Nichols Illinois Civil Practice §874, at 89 (1979), "[i]ssues in a case are formed by the pleadings and allegations, and the proof must correspond to such. A plaintiff may recover only on the case made in his complaint. He cannot make one case by his allegations and recover on a different case made by the proof. He cannot have relief under proof without allegations or under allegations without proof and support." See *Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 300 N.E.2d 616, *appeal denied* (1973), 54 Ill. 2d 599; *Hemingway v. Skinner Engineering Co.* (1969), 117 Ill. App. 2d 452, 254 N.E.2d 133; *Seaburg v. Williams* (1959), 23 Ill. App. 2d 25, 161 N.E.2d 576, *appeal denied* (1960), 18 Ill. 2d 628.

## III

■█ It is clear from the foregoing that the trial court properly denied plaintiff's motion for summary judgment. Plaintiff's contention that in any

event the trial court erred in granting defendants' motion for summary judgment as the documents showed a nonconforming or deviating bid by Builders is without merit. The burden was not on defendants to prove in the first place that Builders was a qualified bidder. Rather, the burden was on plaintiff, who brought the action, to plead facts showing it had a cause of action and to introduce evidence tending to support its contention. This, as this court has previously discussed, plaintiff failed to do, since the sole contentions pleaded, that Builders was unqualified as it had not serviced the required number of doors and lawsuits had been filed against it, are without merit. Since there was no evidence from which a jury could have found for the plaintiff, and the court at trial would have been required to direct a verdict for the defendant, the trial court properly entered summary judgment for the defendant. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847; *White v. United States Fidelity & Guaranty Co.* (1974), 21 Ill. App. 3d 588, 316 N.E.2d 131, *appeal denied* (1974), 57 Ill. 2d 606.) Accordingly, the judgment of the trial court is affirmed.

Affirmed.

JIGANTI and LINN, JJ., concur.