FRANK RYNDERS, Plaintiff, *v.* SANGAMO CONSTRUCTION COMPANY, Defendant and Third-Party Plaintiff-Appellant.—(JOHN MAURER, d/b/a John Maurer Painting and Decorating Company, Third-Party Defendant and Third-Party Plaintiff-Appellee and Cross-Appellant, *v.* CALHOUN COUNTY CONTRACTING CORP., Third-Party Defendant and Cross-Appellee.)

Fourth District    No. 17098

Opinion filed February 4, 1982.

Gary M. Peplow, of Heyl, Royster, Voelker & Allen, of Springfield, for appellant Sangamo Construction Company.

Gillespie, Cadigan & Gillespie, of Springfield (Patrick J. Cadigan, of counsel), for appellee John Maurer.

Heckenkamp and Simhauser, P. C., of Springfield (David L. Drake, of counsel), for cross-appellee Calhoun County Contracting Corp.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff Frank Rynders brought this action to recover damages for personal injuries allegedly occasioned by defendant Sangamo Construction Company's (hereinafter Sangamo) violation of the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 60 *et seq.*). Sangamo, a general contractor, filed a third-party action for indemnity against third-party defendant John Maurer, d/b/a John Maurer Painting and Decorating Company (hereinafter Maurer). Maurer, a subcontractor, in turn filed an action for indemnity against "third party" defendant Calhoun County Contracting Corporation (hereinafter Calhoun), another subcontractor. The cause proceeded to a jury trial in the circuit court of Sangamon County. At the close of the evidence, the court directed a verdict in favor of Calhoun and against Maurer in the second "third party" action. The jury then returned verdicts in favor of plaintiff and against Sangamo in the original action, and in favor of Maurer and against Sangamo in the initial indemnity action. Sangamo and Maurer appeal their adverse verdicts.

The facts out of which this litigation arises are substantially uncontested. Sangamo contracted with the State of Illinois to construct a four-mile section of Interstate 55 in Macoupin County. Crossing the interstate was a highway overpass bridge, the concrete deck of which was the responsibility of Calhoun. In preparing to pour the deck, Calhoun constructed a false deck of 2-inch by 6-inch boards in the flanges of the bridge. These were covered with plywood which served to catch any concrete that spilled during the pouring. When the concrete work was completed, the false deck was removed.

Maurer had contracted with Sangamo to paint the bridge's structural steel, and in October and November of 1975, his employees were painting its underside steel beams. In order to perform this work, Maurer had decided to erect wooden scaffolding consisting of 2 by 6's, covered with plywood and spanning the steel. Plaintiff was employed by Maurer and had worked for several years as an industrial painter. He testified that no safety equipment was used during the construction of the scaffold. He further testified that he asked a Sangamo foreman for permission to use some boards for the construction of the scaffold and his brother, Walt Rynders, confirmed this. Maurer testified that he himself asked permission of a foreman named Earl. Calhoun employed a general foreman named Earl Concrite, but plaintiff testified he never observed anyone from Calhoun at the job site. Actual ownership of the boards was never established.

On November 11, 1975, after the painting was completed, plaintiff was dismantling the scaffold. Again no safety equipment was used. He

had gotten onto the scaffold and was knocking the plywood flooring off the 2 by 6's with a hammer. While standing on a plank and leaning over to hit another plank with his hammer, the plank on which he was standing broke, and plaintiff fell to the ground. The board which broke was unsuitable for use as a scaffold plank as it had an obvious knothole on one side.

We first consider Sangamo's contention that the verdict denying it indemnity was contrary to the manifest weight of the evidence.

■■ The Structural Work Act promotes safety in the construction industry by creating a cause of action for injuries brought about by violations of the Act. (Ill. Rev. Stat. 1979, ch. 48, par. 69.) Those in charge of the type of work covered by the Act are encouraged to eliminate hazardous conditions at job sites, as contributory negligence and assumption of risk are not defenses to such actions. (*Przybylski v. Perkins & Will Architects, Inc.* (1981), 95 Ill. App. 3d 620, 420 N.E.2d 524.) Though a violation of the Act is not based on negligence, Illinois courts apply the rule that a passively negligent tort-feasor can obtain indemnity from a joint tort-feasor who was actively negligent. (*Przybylski v. Perkins & Will Architects, Inc.*; *Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App. 3d 776, 401 N.E.2d 1032, *appeal denied* (1980), 81 Ill. 2d 599; *Mosley v. Northwestern Steel & Wire Co.* (1979), 76 Ill. App. 3d 710, 394 N.E.2d 1230.) As stated in *Rovekamp v. Central Construction Co.* (1964), 45 Ill. App. 2d 441, 449, 195 N.E.2d 756, 759, quoted with approval in *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 104, 338 N.E.2d 868, and *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 291, 226 N.E.2d 630:

> "Although the liability imposed by the Act does not rest upon negligence, there can be degrees of fault among those who, under the Act, are accountable to an injured plaintiff. Who is the more culpable, a party who supervises and coordinates the overall project, or a party who is responsible for the scaffolding and the particular work which produced the injury? Both are in charge of the work * * *. Neither can escape liability to the plaintiff—thus the purpose of the Act is accomplished—but the lesser delinquent, if held accountable by the plaintiff, can transfer its statutory liability to the active delinquent, whose dereliction from duty brought about the plaintiff's injury."

It has been said that "the area of implied indemnity has been muddied up by confusing and misleading terminology, such as 'active' and 'passive' negligence" (*Przybylski v. Perkins & Will Architects, Inc.* (1981), 95 Ill. App. 3d 620, 623, 420 N.E.2d 524, 527), perhaps because determination of the difference "is not a matter of proceeding according to the usual dictionary definitions * * *. These words are terms of art and they must be applied in accordance with concepts worked out by courts

of review upon a case by case basis." (*Moody v. Chicago Transit Authority* (1974), 17 Ill. App. 3d 113, 117, 307 N.E.2d 789, 792-93.) While a discussion of the many cases relied on by the parties would result in an opinion of undue length, we find the principles of two to be particularly in point.

*Jones v. McDougal-Hartmann Co.* (1969), 115 Ill. App. 2d 403, 253 N.E.2d 581, *appeal denied*, involved a journeyman painter who was injured when he fell from an overpass over an interstate freeway while an employee of Robert Janssen, d/b/a R. J. Janssen Painting and Decorating Company. On the day of the accident, Jones met other crew members at Janssen's home where scaffolds and other equipment, owned by Janssen, were loaded on Janssen's truck. When the men arrived at the jobsite, their employer instructed them as to the work to be done and they began rigging cables for their scaffolds. No crew member was designated as foreman.

During the course of the morning, a McDougal-Hartmann truck came along the roadway under the bridge, stopped momentarily, and then proceeded on. No one left the truck or communicated with the painters. That afternoon Jones fell from a ladder and was permanently injured. A jury found in Jones' favor in his action against McDougal-Hartmann, who filed a third-party action against Janssen. The jury returned a verdict in Janssen's favor.

After citing *Rovekamp v. Central Construction Co.* (1964), 45 Ill. App. 2d 441, 195 N.E.2d 756, the court discussed *Sack v. Arcole Midwest Corp.* (1961), 33 Ill. App. 2d 344, 179 N.E.2d 441, *appeal denied* (1962), 23 Ill. 2d 623. In that case, the third-party defendant plumbing subcontractor owned, designed, and furnished a scaffold. The general contractor's field superintendent had questioned the subcontractor's foreman about the type of scaffold to·be used, was on the scaffold when it was first erected, and thought it was of good design and safe. An insecurely fastened hand rail proved to be the cause of Sack's fall and serious injuries. The court concluded that the injuries resulted from an activity within the sole control and responsibility of the plumbing subcontractor and that, as a matter of law, it was actively negligent. Holding that the principle of *Sack* was applicable to the facts in *Jones*, the latter court reversed the jury verdict, explaining:

> "A subcontractor is usually a specialist whose contract ordinarily provides for the accomplishment of a particular result, the means of accomplishing such result being the choice of the subcontractor. Further, the subcontractor ordinarily furnishes the equipment and personnel and such equipment and personnel are under the control, authority and direction of the subcontractor in the performance of the subcontract. With respect to the work the subcon-

tractor has undertaken to perform, he does have a greater responsibility and duty with respect thereto than a contractor exercising general authority over the entire job. Consequently, when the basis of a claim for indemnity arises on account of injuries to third persons which are incident to the performance of a subcontract, and there is no participation by the general contractor in such performance, we believe the subcontractor's conduct is the active wrongdoing thereby requiring indemnity." *Jones v. McDougal-Hartmann Co.* (1969), 115 Ill. App. 2d 403, 407-08, 253 N.E.2d 581, 584.

■■ In the case at bar, the determination of the type of scaffold to be used, the construction of that scaffold, the use of the scaffold, and the dismantling of the scaffold were all responsibilities undertaken by Maurer. The defective plank was selected by a Maurer employee. While safety lines and harnesses were available on Maurer's truck, Maurer did not instruct his employees to use them as he did not feel there was much danger involved. The Sangamo superintendent did not directly supervise the painting, and when he passed the painters, he did not see whether or not they were wearing safety lines. Unlike the superintendent in *Sack*, he neither inspected nor stood on the scaffold. Under these circumstances, we find no participation by Sangamo in the performance of the subcontract. Therefore, under the rationale of *Jones*, we hold that Maurer was guilty of active fault as a matter of law, and the contrary jury verdict is not supported by the evidence.

We next consider Maurer's contention that the directed verdict in favor of Calhoun was improper as not supported by the evidence. Maurer argues that Calhoun was best able to avoid plaintiff's injury as it provided the plank with constructive knowledge of the defect.

■■ The planks used for the scaffold came from a pile of lumber at the worksite near the bridge. While there was a conflict of testimony as to whether permission to use the planks was granted by Maurer or Sangamo, there was no evidence presented as to ownership of the lumber. The knothole which rendered the plank unsuitable for scaffolding was readily apparent to anyone who examined both sides of the board. Assuming, *arguendo*, that Calhoun did loan the lumber, no consideration passed between the parties and the bailment was gratuitous. This being the case, Calhoun's only duty was to warn Maurer of known defects. (See 8 Am. Jur. 2d *Bailments* §162 (1980).) As no evidence that Calhoun was aware of the defect was presented by Maurer, the trial court properly directed the verdict in Calhoun's favor.

Accordingly, the judgment of the circuit court of Sangamon County entered on the jury verdict in favor of Maurer is reversed and this cause is remanded with directions that judgment be entered in accord with the

views expressed herein. The directed verdict in favor of Calhoun is affirmed.

Affirmed in part, reversed in part, and remanded with directions.

ALLOY and HEIPLE, JJ., concur.