PAUL T. PAGANO, Plaintiff-Appellant, v. OCCIDENTAL CHEMICAL CORPORATION, Defendant-Appellee (Diamond Shamrock Chemicals Company, Defendant).

First District (4th Division)   No. 1—92—2350

Opinion filed January 13, 1994.

906

Law Office of Steven L. Toney, of New London, Wisconsin (Steven L. Toney, of counsel), for appellant.

Hinshaw & Culbertson, of Chicago (Dan L. Boho and Joshua G. Vincent, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Paul T. Pagano, was injured on February 7, 1986, when he was loading 55-gallon drums of liquid ink onto a truck from a dock at Diamond Shamrock Chemical Company (Diamond), the predecessor in interest of Occidental Chemical Corporation (Occidental). Counts I and II of the plaintiff's third-amended complaint sought recovery against the defendants, Diamond and Occidental, for negligence and strict tort liability. On August 31, 1990, the circuit court of Cook County granted summary judgment against the plaintiff on the strict tort liability claim and no appeal was taken from that order. On June 5, 1992, the trial court granted summary judgment in favor of the defendants on the plaintiff's negligence claim and the plaintiff has appealed. For the reasons which follow, we affirm the judgment in part, reverse in part, and remand for further proceedings consistent with this opinion.

All of the parties relied upon the plaintiff's discovery deposition during the summary judgment proceeding. In his deposition, the plaintiff testified that he was employed as a truck driver for N&M Transfer Company (N&M) on the day he was injured. He was dispatched to Diamond to pick up 16 drums of liquid ink. The plaintiff expected that his truck would be loaded by Diamond's dock employees, but when he arrived he was informed that Diamond's employees were too busy to load the truck. When the plaintiff requested assistance, one of Diamond's employees brought him a barrel dolly. A Diamond employee brought the drums of ink to the loading dock using a forklift, but refused to use the device to load the drums onto the plaintiff's truck citing safety reasons. The plaintiff described the drums of ink as 55-gallon steel barrels which weighed 526 pounds each. The plaintiff positioned the drums on the barrel dolly and individually loaded them onto his truck. After loading a drum on the dolly, he would push it from the dock over a dock plate and onto the bed of his truck. The plaintiff successfully loaded 14 of the drums in that manner. While moving the fifteenth drum, he was injured when the clamping device, which holds the top of the drum to the dolly, slipped, allowing the drum to shift. The shifting motion of the drum caused the dolly to move backward toward the plaintiff. He pushed the dolly, but the force caused him to fall and sustain injury. However, neither the dolly nor the drum fell on the plaintiff. The plaintiff was standing on the bed of his truck at the time he fell.

In paragraph 9 of count I of his complaint, the plaintiff charged

that the defendants were negligent in one or more of the following ways:

"a. Failed to provide the necessary and proper help to load the barrels of ink onto trucks.

b. Failed to provide the proper equipment necessary to safely load the barrels of ink onto the truck.

c. Failed to warn the truck driver that the 'claw' dolly was inadequate to load the barrels of ink.

d. Provided a 'claw' dolly which was inadequate to safely load the barrels of ink.

e. Directed the loading of barrels of ink without the necessary and proper equipment to safely perform the job.

f. Failed to instruct plaintiff on the proper use of the claw dolly.

g. Inadequately supervised the loading of the barrels of ink."

The plaintiff further alleged that the defendants' negligent acts proximately caused the injuries for which he sought recovery.

In moving for summary judgment, the defendants argued that: (1) Diamond was under no duty to load the drums onto the plaintiff's truck; (2) as a gratuitous bailor of the dolly, Diamond's only duty was to warn the plaintiff of known defects in the device; (3) Diamond knew of no defects in the dolly; (4) there was no proximate causal relationship between the condition of the dolly and any injury suffered by the plaintiff; and (5) the condition of the dolly was open and obvious. The defendants argued that there was no genuine issue of material fact on any of these contentions thus entitling them to judgment as a matter of law. The plaintiff countered by arguing that: (1) the summary judgment motion was barred under the doctrine of *res judicata*; (2) Diamond was obligated to load the plaintiff's truck; (3) the dolly which Diamond provided was unsafe; and (4) the condition of the dolly was causally related to the plaintiff's injuries.

In a summary judgment proceeding, the movant is the burdened party. (*Kielbasa v. St. Mary of Nazareth Hospital* (1991), 209 Ill. App. 3d 401, 568 N.E.2d 208.) Summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. (*Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) In ruling on the motion, the court is required to construe all evidentiary material strictly against the movant and liberally in favor of the respondent. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397.) If the evidentiary material before the court could lead to more than one conclusion or inference, the court must adopt the conclusion or inference which is most favorable to

the opponent of the motion. (*Lapidot v. Memorial Medical Center* (1986), 144 Ill. App. 3d 141, 494 N.E.2d 838.) Because summary judgment is a drastic measure which disposes of a case without trial, it should not be granted unless the right of the movant is free from doubt. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079.) As such, if the evidentiary material before the court discloses a dispute as to the material facts placed in issue by the movant, the motion must be denied. *Ray v. City of Chicago* (1960), 19 Ill. 2d 593, 169 N.E.2d 73.

Because the propriety of an order granting summary judgment is a question of law, a review of such an order is *de novo*, independent of the trial court's reasoning on the issues presented. (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 615 N.E.2d 736.) If, from a review of the pleadings and evidentiary material before the trial court, a reviewing court determines that a material issue of fact exists or that the summary judgment was based upon an erroneous interpretation of the law, a reversal is warranted. *Reed v. Fleming* (1985), 132 Ill. App. 3d 722, 477 N.E.2d 733; *Warren v. Lemay* (1986), 144 Ill. App. 3d 107, 494 N.E.2d 206.

Because of the manner in which we dispose of this appeal, before addressing the issues raised by the plaintiff, we must address several issues which were raised in the trial court but were not specifically argued here.

■ As indicated earlier, the plaintiff responded to the defendants' summary judgment motion, in part, with a claim that it was barred under the doctrine of *res judicata*. The basis of the plaintiff's argument was the trial court's denial of a similar motion directed against his negligence claim on August 31, 1990. The plaintiff's contention in this regard was flawed for several reasons. First, section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005) places no limit on the number of motions for summary judgment that may be brought by a party. (See *Loveland v. City of Lewistown* (1980), 84 Ill. App. 3d 190, 405 N.E.2d 453.) Second, before the doctrine of *res judicata* can be applied, the prior order or judgment upon which the claim is based must be final. (*Housing Authority v. Young Men's Christian Association* (1984), 101 Ill. 2d 246, 461 N.E.2d 959; *Hughey v. Industrial Comm'n* (1979), 76 Ill. 2d 577, 394 N.E.2d 1164.) The denial of a motion for summary judgment is an interlocutory order which is neither final nor appealable. (*Dick Lashbrook Corp. v. Pinebrook Foundation, Inc.* (1985), 134 Ill. App. 3d 56, 479 N.E.2d 1229.) Absent finality of character, the trial court's earlier denial of a motion for summary judgment cannot form the basis of a claim of *res judicata*.

■ Liability for plaintiff's injuries as pled in the complaint was predicated, in part, upon Diamond's failure to provide help in loading the drums onto the plaintiff's truck and inadequate supervision of the loading process. The uncontroverted evidence before the trial court reveals that the invoice for the sale of the goods being picked up by the plaintiff at the time of his injury carried the terms: "Shipped From 134 Chicago, Il. *** Freight Terms FOB Same." The only reasonable interpretation of those terms under the facts of this case is that Diamond undertook to place the goods in the hands of the designated carrier, the plaintiff's employer, N & M. Absent the terms "F.O.B. vessel, car, or other vehicle," Diamond was under no obligation to load or supervise the loading of the drums of ink onto the plaintiff's truck. (See Ill. Rev. Stat. 1991, ch. 26, pars. 2—319(1)(a), (1)(c).) Without a duty to load the drums onto the plaintiff's truck, it follows that Diamond's failure to do so or to supervise the loading process cannot form the predicate of liability and the defendants were entitled to judgment as a matter of law on these allegations.

As to the plaintiff's charge that the defendants negligently directed the loading procedure, suffice it to say that the uncontroverted evidence in this case establishes that Diamond's employees did not direct the process. To be sure, the plaintiff was informed that he would have to load the drums of ink himself and a dolly was placed at his disposal for use in loading, but nothing in the record suggests that Diamond's employees told the plaintiff how to load his truck, required him to use a dolly, or instructed him in its use in any manner. Also, there is no dispute from the evidence before the trial court that the use of a barrel dolly was one of two available means to load the drums when a forklift could not be used; the other method was to tip the barrels and roll them manually.

Having disposed of these issues, we turn now to the plaintiff's contentions on appeal. In urging reversal of the summary judgment granted on his negligence claim, the plaintiff raises two arguments. First, he argues that his injuries were caused by unsafe conditions on Diamond's property, namely, the dock plate which by reason of its slope became slippery from the snow falling and accumulating upon it. The plaintiff contends that this condition deprived him of a safe means of ingress and egress from the dock to his truck as he was loading the drums of ink. Second, he argues that Diamond entrusted him with a barrel dolly for use in loading the drums when in the exercise of reasonable care it should have known that the dolly was unsuitable for use in transporting the drums under the conditions present at the time of the plaintiff's injury.

The plaintiff's arguments directed to the condition of Diamond's

premises as a proximate cause of his injuries appear for the first time in his brief on appeal. These premises liability theories fail for three reasons.

■ First, the plaintiff never alleged in his complaint that Diamond was in any way negligent in the manner in which it maintained its property or that any condition upon the property caused the injuries for which he sought recovery. A plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in his complaint. The very purpose of a complaint is to advise the defendant of the claim it is called upon to meet. (See Ill. Rev. Stat. 1991, ch. 110, par. 2—612(b).) In ruling on a motion for summary judgment, the court looks to the pleadings to determine the issues in controversy. If the defendant is entitled to judgment as a matter of law on the claims as pled by the plaintiff, the motion will be granted without regard to the presence of evidentiary material which might create a right of recovery against the moving defendant on some unpled claim or theory. Under the Code of Civil Procedure, a plaintiff's remedy in such a circumstance is to move to file an amended complaint before the summary judgment is granted under section 2—616(a) or after under section 2—1005(g). (Ill. Rev. Stat. 1991, ch. 110, pars. 2—616(a), 2—1005(g).) Having failed to seek relief under either section, the plaintiff will not be heard to complain that summary judgment was inappropriately granted because of the existence of evidence supporting a theory of recovery that he never pled in his complaint.

Second, the plaintiff never raised the premises liability theories at any stage of the proceedings before the trial court. A party cannot raise new factual theories of recovery for the first time on appeal (*Handy v. Sears, Roebuck & Co.* (1989), 182 Ill. App. 3d 969, 538 N.E.2d 846), because issues not raised before the trial court are waived for purposes of appeal (*Wilson v. Gorski's Food Fair* (1990), 196 Ill. App. 3d 612, 554 N.E.2d 412).

Third, even if the plaintiff's premises liability theories were not waived, they fail on their merits. The plaintiff testified that, at the time he fell, he was on the bed of his own truck not on Diamond's dock plate. He attributed the instability of the barrel he was moving to the condition of the dolly. Further, the plaintiff testified that he did not slip. By his own testimony, the plaintiff has eliminated any causal connection between a condition on Diamond's property and the injuries that he suffered as a result of his fall. Additionally, there is nothing in the record of this case that would support the notion that the accumulation of snow that existed upon Diamond's premises was anything other than natural in origin; Illinois has long followed

the rule that liability on the part of a landowner cannot be predicated upon a natural accumulation of ice, snow, or water (*Harkins v. System Parking, Inc.* (1989), 186 Ill. App. 3d 869, 542 N.E.2d 921).

The remaining question before this court is whether summary judgment was proper on the issue of the adequacy and condition of the barrel dolly entrusted to the plaintiff by Diamond's employee. The plaintiff contends that the evidentiary material before the trial court raises a triable question of fact on whether the device was appropriate for transporting barrels weighing 526 pounds. The defendants counter by arguing that as a gratuitous bailor of the barrel dolly, Diamond's only obligation was to warn the plaintiff of any known defect in the device. (See *McMaster v. Zwicker* (1990), 194 Ill. App. 3d 923, 551 N.E.2d 654; *Rynders v. Sangamo Construction Co.* (1982), 103 Ill. App. 3d 552, 431 N.E.2d 1357.) Also, because the deposition testimony of three of Diamond's employees established that there were no known defects in the dolly, summary judgment was appropriate and the order of the trial court should be affirmed.

There is little dispute that Diamond was a gratuitous bailor of the barrel dolly. As indicated earlier, it was under no obligation to load the drums of ink onto the plaintiff's truck. While there is a dispute as to whether the plaintiff specifically requested to use one of Diamond's dollies or if a Diamond employee made an unsolicited offer to allow the plaintiff to use the device, there is no dispute that Diamond's employee did in fact make the dolly available for the plaintiff's use, but there is no evidence that any consideration was paid or that the use was for Diamond's benefit. Questions then arise as to the duty owed by a gratuitous bailor of personal property to the bailee and the extent of liability assumed by such a bailor for injuries suffered by the bailee as a consequence of a defect in the property.

Relying upon *McMaster* (194 Ill. App. 3d at 925-26) and *Rynders* (103 Ill. App. 3d at 556), the defendants contend that the only duty owed by a gratuitous bailor is to warn the bailee of known defects in the property and that the bailor's liability extends only to injuries which are the result of defects in the property known to exist before the bailment. (See also W. Keaton, Prosser & Keaton on Torts § 104 (5th ed. 1984).) The plaintiff argues that the supplier of a chattel for use by another is subject to liability for injuries sustained by the user if the supplier knows or has reason to know that the chattel is likely to be dangerous for the use for which it is supplied. Restatement (Second) of Torts §§ 388, 405 (1965).

In *Huckabee v. Bell & Howell, Inc.* (1970), 47 Ill. 2d 153, 158, 265 N.E.2d 134, our supreme court adopted the position taken by section 388 of the Restatement (Second) of Torts in stating the stan-

dard of liability for a bailor. As was noted in *Jones v. McCook Drum & Barrel Co.* (1992), 229 Ill. App. 3d 1083, 1086, 595 N.E.2d 670, "while the case before the court in *Huckabee* involved leased equipment, the court made no other distinction between gratuitous and nongratuitous bailments." We note that comment *c* to section 388 makes no such distinction; to the contrary, it provides: "The rules stated in this Section *** apply to all kinds of bailors, irrespective of whether the bailment is for a reward or gratuitous ***." (Restatement (Second) of Torts § 388, Comment *c*, at 302 (1965).) We find no rational reason to perpetuate the archaic distinction in the duties and liabilities of bailors drawn solely upon their status as gratuitous or nongratuitous actors. Hence, we adopt the position of section 388 of the Restatement (Second) of Torts and hold that a gratuitous bailor may be liable for physical harm caused by the use of his chattel when he knows or has reason to know that the chattel is or is likely to be dangerous when put to the use for which it is supplied; has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and fails to exercise reasonable care to inform the user of its dangerous condition or of the facts which make it likely to be dangerous. Having articulated the rule, we must analyze its application to the facts of this case as presented to the court below.

In his deposition, the plaintiff testified that the dolly provided for his use was "old," "worn," and "rickety." He described the "claw" or clamping device which holds the barrel to the dolly as "stretched" or "bent out of shape." According to the plaintiff, the claw failed to hold the barrels tight against the dolly allowing the barrels to wobble and shift somewhat as he moved them. He stated that he never got a tight grip on any of the barrels that he moved, but he did not know that the condition was dangerous. The plaintiff stated that the claw had not given way on any of the drums prior to the occurrence that gave rise to his injury. In the plaintiff's opinion, the dolly was not made to handle the type of barrels that he was moving or the weight of the barrels involved.

In addition to the plaintiff's deposition testimony, the trial court had before it the deposition testimony of three men employed by Diamond at the time of the plaintiff's injury.

Keith Sus was the warehouseman who brought the dolly to the plaintiff on the date of his accident. He testified that Diamond had two barrel dollies in its warehouse on the date of the occurrence which had been in use for 13 years; both were basically the same. Sus stated that he had never used a barrel dolly to move barrels; he always used a forklift for that purpose. He had used the barrel dollies

to pick up garbage cans because they were too light for the forklift. He was familiar with both dollies and testified that both functioned as expected, neither had mechanical problems, and he had never heard of any problems with their use. Sus further testified that he had never seen any Diamond employee use the dollies to move barrels.

James Salvo, who was Diamond's warehouse supervisor, testified that he had never used either barrel dolly. It was his testimony that on rare occasions Diamond's employees might use a dolly to move a barrel in the warehouse, but most such work was done with a forklift. He had never heard of any problems with either dolly, he had never received any complaints about them, and they never required servicing. Salvo acknowledged that if a driver picking up a load needed to use one of the dollies, they were available.

Wayne Smith, also a warehouseman for Diamond on the date of the plaintiff's accident, testified that he had used both of the available dollies on occasion to move barrels around the warehouse but never to load a truck. When he used the dollies, he never experienced any difficulty with either of them. He stated that on rare occasions he would allow truck drivers to use the dollies to load their trucks.

Without question, there is a clear conflict between the testimony of the plaintiff and that of Diamond's employees as to the condition of the subject dolly. For the purposes of the defendants' motion for summary judgment, that conflict must be resolved in favor of the plaintiff. If the dolly was in the condition described by the plaintiff, a jury could reasonably infer that Diamond had reason to know that it was likely to be dangerous when used to move 526-pound drums. While the plaintiff clearly realized that the dolly was old, worn, and rickety and that it did not grip the barrels tightly as he moved the first 14 drums, the record does not support a conclusive finding that he realized that the claw or clamping mechanism was capable of releasing while a barrel was being moved.

There are serious credibility issues that must be resolved to dispose of this action, but those are questions for a jury to decide. (*Becke v. Fred A. Smith Lumber Co.* (1973), 9 Ill. App. 3d 563, 292 N.E.2d 572.) We believe that when viewed in its light most favorable to the plaintiff, the evidentiary material presented to the trial court sufficiently demonstrates triable issues of fact relating to the condition of the subject dolly to preclude a summary judgment on the allegations in count I of the plaintiff's third-amended complaint which were directed to the condition of the dolly, Diamond's failure to warn the plaintiff of that condition, and its failure to instruct the plaintiff in the use of the dolly.

For the foregoing reasons, we affirm summary judgment on paragraphs 9(a), (e), and (g) of count I of the plaintiff's third-amended complaint; we reverse summary judgment on paragraphs 9(b), (c), (d), and (f); and we remand this action for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

CAHILL, P.J., and THEIS, J., concur.