No. 2--95--1475

                                                                  

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

                                                                  

LAUREL MOTORS, INC.,                 )  Appeal from the Circuit

                                     )  Court of Du Page County.

     Plaintiff-Appellant,            )

                                     )

          v.                         )  No. 95--L--769

                                     )

AIRWAYS TRANSPORTATION GROUP         )

OF COMPANIES, INC., AIRWAYS          )

RENT A CAR COMPANY, AIRWAYS          )

LEASING, INC., AIRWAYS RENT A        )

CAR SYSTEM, ASTOR CHAUFFEURED        )

LIMOUSINE, O'HARE VALET              )

PARKING, LEASED CAR SALES,           )

INC., JAMES COUVALL, PETER           )

LEEB, LAWRENCE WRIGHT, BRIAN         )

BARRISH, PETER NATHON, SIR           )

MANAGEMENT, INC., BRYSSON CARE,      )

INC., MARC ZARANSKY, MICHAEL         )

ZARANSKY, DAVID ZARANSKY, VALET      )

AUTOMOBILE LEASING, INC.,            )

HEDCO, a Partnership, and            )

RIDGEVIEW MOTORS, INC.,              )  Honorable

                                     )  Robert K. Kilander,

     Defendants-Appellees.           )  Judge, Presiding.

                                                                  

     JUSTICE INGLIS delivered the opinion of the court:

     Plaintiff, Laurel Motors Inc., appeals for the second time

from an order of the circuit court of Du Page County.  In the first

appeal, plaintiff challenged the circuit court's order directing it

to assign and deliver certificates of origin for four automobiles

to defendant, Bank One.  We dismissed that appeal for lack of

jurisdiction.  Plaintiff next asked leave to file an interlocutory

appeal from the entry of summary judgment in favor of Bank One.  We

denied that request for leave to appeal.  Plaintiff now appeals an

order granting summary judgment in favor of SIR Management, Inc.,

Brysson Care, Inc., Bryan Barrish, Peter Leeb, Hedco Partnership,

and Lawrence Wright (lessees) on counts I, II, and VII of

plaintiff's third amended complaint in replevin.  We affirm.

     Plaintiff is a corporation engaged in the sale of new

automobiles.  Between January 31, 1995, and March 16, 1995, Leased

Car Sales (LCS) entered into an agreement with plaintiff to

purchase four new automobiles for a total purchase price of

$349,833, which automobiles are the subject of the present

controversy.

     Prior to January 1995, plaintiff and LCS had a previous

relationship in which LCS had purchased between 50 and 150 luxury

vehicles from plaintiff.  LCS would contact plaintiff by telephone

and order a specific make and model of vehicle.  Plaintiff would

locate a vehicle matching LCS' request and prepare the necessary

documentation.

     Plaintiff would then transfer possession of the vehicle to

LCS, often allowing LCS several days to make the necessary

payments.  Plaintiff did not sign a security agreement with LCS. 

Plaintiff would, however, retain a certificate of origin for the

vehicle until LCS' checks had cleared the bank.

     The present controversy began when lessees approached LCS

about leasing several luxury automobiles.  LCS contacted plaintiff

and ordered four automobiles.  LCS then contacted Valet Auto

Leasing (VAL), a company in the business of arranging leases for

second-party financial institutions.  LCS asked VAL to prepare a

Bank One lease and other appropriate forms for the sale and lease

of the subject vehicles.

     VAL forwarded to Bank One a copy of the Bank One lease, a copy

of the certificate of origin, and additional information it

received from LCS.  After Bank One approved the lessees' credit, it

issued a check payable to VAL for the purchase of the subject

vehicles.

     After receiving payment from Bank One, VAL drafted and

delivered checks payable to LCS for each of the subject vehicles. 

LCS was then responsible for tendering those monies to plaintiff

for the subject vehicles.

     In February and March 1995, plaintiff delivered possession of

the subject vehicles to LCS and, in several cases, directly to Bank

One's lessees.  The vehicles actually delivered by plaintiff had

the following vehicle identification numbers (VINs):  (1) 

WDBFA76E4SF110048 (048); (2) WDBGA51E8SA234692 (692); (3)

WDBEA66E3SC212531 (531); and (4) WDBGA43E2SA239071 (071).  While

there is some dispute regarding certain VINs, the parties agree

that the above VINs accurately represent the vehicles actually in

the possession of the lessees.

     LCS tendered three checks for three of the above automobiles

(VINs 048, 692, and 071).  LCS did not tender payment on the

remaining automobile (VIN 531).  Plaintiff presented the checks

submitted by LCS, but the checks were returned for insufficient

funds.  In the interim, LCS transferred the vehicles to Bank One

for what appears to be a total purchase price of $294,000.

     On April 7, 1995, plaintiff filed a complaint in replevin,

seeking possession of the subject vehicles.  The trial court

entered a replevin order, and plaintiff began repossessing the

vehicles.  Bank One and the lessees, however, all filed a motion to

intervene and a motion to dismiss the replevin action.  On April

24, 1995, the trial court entered an order requiring plaintiff to

return the vehicles that it had repossessed and ordered plaintiff

not to take any action pursuant to the order of replevin until the

matter proceeded to trial.

     On May 19, 1995, plaintiff filed its third amended complaint

in replevin.  Count I was a claim for replevin against the lessees

and Bank One.  Count II sought a declaration that the lessees were

not lessees in the ordinary course of business.  Count VII sought

damages from the lessees for their wrongful use of the automobiles. 

The remaining counts of the complaint did not involve the lessees.

     Both the lessees and Bank One each filed motions for summary

judgment.  The trial court granted the lessees' motion on September

7, 1995, finding that plaintiff had no security interest in the

automobiles and that the cars were transferred to the lessees in

the ordinary course of business.  The trial court found that there

was no just reason to delay enforcement or appeal of the order

granting summary judgment as to counts I, II, or VII, pursuant to

Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).  This timely

appeal followed.

     On appeal, plaintiff contends the trial court erred in

granting summary judgment as to counts I, II, and VII of its third

amended complaint because genuine issues of material fact existed.

Summary judgment is properly granted if the pleadings, depositions,

and admissions on file, together with any affidavits, show there is

no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law.  Leschinski v. Forest

City Steel Erectors, 243 Ill. App. 3d 124, 127 (1993); 735 ILCS

5/2--1005(d) (West 1994).  In ruling on the motion, the court is

required to construe all evidentiary material strictly against the

movant and liberally in favor of the respondent.  Pagano v.

Occidental Chemical Corp., 257 Ill. App. 3d 905, 908 (1994).

     The propriety of an order granting summary judgment is a

question of law, and, as such, we review such orders de novo. 

Pagano, 257 Ill. App. 3d at 909.  If, after reviewing the pleadings

and evidentiary material before the trial court, the reviewing

court determines that a material issue of fact exists or that the

summary judgment was based on an erroneous interpretation of the

law, then reversal is warranted.  Pagano, 257 Ill. App. 3d at 909.

     Plaintiff first argues that its retention of the certificates

of origin for the automobiles is sufficient to create a security

interest in the automobiles.  Plaintiff reasons that a certificate

of origin is a "document of title" under the Uniform Commercial

Code (Code) (810 ILCS 5/9--105(f) (West 1994)).  A document of

title is a negotiable document, and a party can thus take and

perfect a security interest by retaining such a negotiable document

under section 9--305 of the Code.  810 ILCS 5/9--305 (West 1994). 

     Lessees counter that plaintiff failed to create a security

interest by failing to comply with the requirements of article 9 of

the Code.  Moreover, lessees contend that plaintiff's reliance on

section 9--305 of the Code is misplaced and premature because that

section deals with perfecting a security interest and plaintiff

failed to first address whether it had created a security interest.

     To address the issue of whether plaintiff created a security

interest in the automobiles by retaining the certificates of

origin, we must look first to the Code.  Andrews v. Mid-America

Bank & Trust Co., 152 Ill. App. 3d 139, 143 (1987) (creation of

security interest in motor vehicle is solely governed by Code).  In

order to create a security interest in collateral, the collateral

must be in the possession of the secured party, or there must be a

signed security agreement.  810 ILCS 5/9--203 (West 1994).  It is

undisputed that plaintiff never signed a security agreement with

LCS or the lessees.  Therefore, in order to create a security

interest here, plaintiff must retain the collateral.

     Plaintiff claims that the certificates of origin for the

automobiles are the collateral.  This contention is without merit. 

The automobiles themselves, and not the certificates, are the items

of collateral.  An examination of the purposes of the filing

requirements confirms this conclusion.

     The purpose of filing a financing statement is to put third

parties on notice that the secured party has a security interest in

the collateral.  Signal Capital Corp. v. Lake Shore National Bank,

273 Ill. App. 3d 761, 771 (1995).  Similarly, possession of the

collateral also puts third parties on notice that the possessor may

have an interest in the collateral.  Edibles Corp. v. West Ontario

Street Ltd. Partnership, 273 Ill. App. 3d 550, 554 (1995).

     Here, plaintiff's retention of the certificates of origin

fails to notify any third parties of plaintiff's claimed security

interests.  Only a dealer receives a certificate of origin for an

automobile.  If a purchaser of the automobile is not a dealer, then

the dealer sends the certificate of origin directly to the

Secretary of State for processing.  Thus, a nondealer purchaser

would never even see a certificate of origin in any event. 

Therefore, plaintiff's retention of the certificates of origin

would fail to notify third parties purchasing cars from LCS that

plaintiff had claimed a security interest in the automobile.  This

is especially true in the case of a lessee, who would not even

receive the title to the vehicle.  Plaintiff's retention of the

certificates of origin of the automobiles is therefore ineffective

to create a security interest.

     Plaintiff seeks to avoid the effect of article 9 by claiming

a security interest was created pursuant to section 2--507 of the

Code, which states in pertinent part "[w]here payment is due and

demanded on the delivery to the buyer of goods ***, his right as

against the seller to retain or dispose of them is conditional upon

his making the payment due."  810 ILCS 5/2--507(2) (West 1994). 

Thus, because LCS did not immediately tender a check to plaintiff,

plaintiff could exercise its right of reclamation.  Plaintiff would

then turn to the priority rules to determine whether its interest

in the automobiles was superior to Bank One's interest.  

     Lessees respond first by pointing out that plaintiff raises

this argument for the first time on appeal.  Additionally, lessees

contend it was undisputed that payment for the automobiles was

neither due nor demanded upon delivery, but several days later. 

Hence the transfer and payment conformed to the parties'

expectations, and section 2--507 is not properly invoked for these

transactions.

     Where a party raises an issue for the first time on appeal, we

need not consider it.  Randle v. Hinckley Parachute Center, Inc.,

141 Ill. App. 3d 660, 663 (1986).  Plaintiff did not raise its

section 2--507 argument before the trial court in its memorandum in

opposition to the motion for summary judgment or elsewhere, and,

therefore, we do not consider it.  We note, however, that

plaintiff's argument is nevertheless unavailing.

     While the plaintiff's purchase order form contains the

notation "unpaid cash balance due on delivery," the form also

states "if this is a credit sale" and the appropriate forms have

not been provided to the purchaser, then "this [purchase] order is

not binding and either party may cancel ***."  Moreover, the form

does not provide any indication of whether the transaction is to be

cash or credit.  The binding effect of the "due on delivery"

language is therefore questionable.  Equally important, the form

does not prohibit oral modifications or waivers of the agreement. 

It is undisputed that LCS was not required to tender payment on

delivery of an automobile.  As payment was never "due and demanded

on the delivery," the provisions of section 2--507 do not apply. 

Thus, plaintiff did not create a security interest pursuant to

article 2.

     Finally, plaintiff argues that it intended to retain ownership

of the vehicles by retaining the certificates of origin pending

clearance of the checks LCS tendered.  It is clear, however, that

plaintiff knew that LCS would resell the subject vehicles.  Thus,

plaintiff could not have intended to retain ownership of the

vehicles in light of its knowledge that, upon their transfer, the

vehicles would have been resold to third parties.

     For the foregoing reasons, the judgment of the circuit court

of Du Page County is affirmed.

     Affirmed.

     BOWMAN and DOYLE, JJ., concur.