NOTICE

Decision filed 02/11/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190384-U

NO. 5-19-0384

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| PAUL J. GALESKI, as Trustee of the Paul J. Galeski Revocable Trust, TIMOTHY DEWALD, KRIS BROWER, CINDY HUSEMAN, and BRUCE FREELAND, | ) ) ) ) ) | Appeal from the Circuit Court of Monroe County. |
| Plaintiffs-Appellees, | ) ) | No. 18-CH-42 |
| v. | ) ) | |
| SUNSET OVERLOOK, LLC, | ) ) | Honorable Julia R. Gomric, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Overstreet and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The order of the circuit court of Monroe County permanently enjoining the defendant from serving food or drink outside, providing ancillary entertainment outside, and providing ancillary entertainment inside without a special use permit is hereby affirmed where the plaintiffs did not fail to exhaust administrative remedies, and where there was no genuine issue of material facts, and the plaintiffs were entitled to judgment as a matter of law.

¶ 2    This interlocutory appeal was brought by the defendant, Sunset Overlook, LLC. The plaintiffs in this case are all owners or tenants of residential property located within 1200 feet of the defendant's property. The plaintiffs filed a complaint with the trial court

1

alleging that the defendant was violating Columbia Municipal Code (Code or Columbia Code) § 17.26.020 (amended Mar. 20, 2006) and creating a nuisance. The plaintiffs filed a motion for partial summary judgment for the counts relating to violations of the Code, which the court granted. The court's order permanently enjoined the defendant from serving food or drink outside, providing ancillary entertainment outside, or providing ancillary entertainment inside without a special use permit as prescribed in the Code. See *id*. The defendant appeals.

¶ 3                                      I. BACKGROUND

¶ 4      C-1 zoning permits the operation of restaurants, tea rooms, and cafes in that zone; however, C-2 zoning is necessary to operate a lounge, tavern, or pub under the Code. Columbia Municipal Code §§ 17.26.020(A)(14) (amended Mar. 20, 2006); 17.28.010(A)(49) (amended May 16, 2012). A restaurant is defined as a "business establishment whose principal business is the selling of unpackaged food to the customer in a ready-to-consume state, in individual servings, or in nondisposable containers, and where the customer consumes these foods while seated at tables or counters located within the building." Columbia Municipal Code § 17.04.030 (amended May 16, 2012). The purpose of C-1 zoning, according to the Code, is to "provide for certain limited sales and service facilities located in residential areas to provide a convenience to residents of the immediate neighborhood. Such districts are limited in size and facilities to preserve and protect the general character of the residential areas surrounding such districts." Columbia Municipal Code § 17.26.010 (eff. 1989). One of the conditions of use for C-1 zoning provided in the Code is that "[t]he sale of

foodstuffs or articles intended for human consumption on premises shall be conducted wholly within an enclosed building." Columbia Municipal Code § 17.26.030(B) (eff. 1989).

¶ 5    On November 27, 2018, the plaintiffs filed a complaint in the circuit court of Monroe County seeking a permanent injunction and damages against the defendant. The complaint alleged, in pertinent part, three Code violations by the defendant. They alleged that the property on which the defendant's business operated was located in Monroe County; that until June 17, 2013, the property was zoned "S-1 Historic Building District"; that the property was then rezoned to "R-3 One Family Dwelling"; that on December 1, 2014, the city again rezoned the property to "C-1 Neighborhood Business" with an "HP Historic Protection Overlay"; that the property continues to be zoned as C-1 with HP Overlay; that on June 18, 2015, the defendant purchased the property; that on May 23, 2018, the city issued the defendant a business license to "operate as a restaurant"; on May 21, 2018, the city issued the defendant a liquor license; on June 15, 2018, the defendant hosted a grand opening and continues to operate its business; and that the defendant has violated and continues to violate numerous city ordinances including impermissible use as a lounge, impermissible sale of food and drink outside, and impermissible ancillary entertainment. The plaintiffs alleged that the defendant "routinely sells and serves food and drinks to customers outside its building." The defendant serves alcohol to its customers outside, does not require its customers to purchase a meal in order to be served alcohol, provides outside ancillary entertainment, provides indoor ancillary entertainment without a special use permit, plays both live and recorded music through amplifiers, and

3

does not cater to or provide any convenience to nearby residents as enumerated in the purpose section of the Code.[1]

¶ 6    On February 27, 2019, upon order of the trial court, the plaintiffs filed an amended complaint that was substantively the same as the original complaint. On March 13, 2019, the defendant filed an answer admitting that the defendant's property is zoned as C-1 with an HP Overlay; that it held a grand opening on June 15, 2018; that it has, on multiple occasions, permitted its customers to consume food outside of the building; that, on multiple occasions, it has permitted its customers to consume drinks outside of the building; and that according to its owners, they "wanted to go slow on the food" because they "don't have a food background" and instead "focus on the view, the spirits, and the people, especially since [they] have never been in the restaurant business." Therefore, they "focus[ed] on making sure [they had] a good beer selection and good wine selection."

¶ 7    On April 21, 2019, five of the plaintiffs filed a complaint against the defendant with the Local Liquor Control Commission (Commission). The complaint sought the revocation of the defendant's liquor license.

¶ 8    On June 18, 2019, the plaintiffs filed a motion for partial summary judgment as to the three allegations that the defendant (1) sold food and drink outside, (2) provided ancillary entertainment outside, and (3) provided ancillary entertainment inside without a special use permit. It laid out the following facts relevant to the Code violations which provided the following in relevant part. Over 80% of the defendant's sales were of

---

[1]There were other allegations included in count I that are not the subject of this appeal.

alcoholic beverages. Less than 20% of its revenue came from the sale of food. Prior to the filing of the complaint, the defendant's Facebook page referred to the establishment as a "bar." The defendant permits its customers to consume food and drink outside. The defendant does not require that patrons purchase food in order to be served alcohol. The defendant has hired musicians to play music through amplifiers both inside and outside of the establishment. On May 4, 2019, the defendant hosted a Kentucky Derby themed party which utilized large outdoor projection screens to display the races. On May 15, 2019, the defendant hosted a St. Louis Blues watch party where not only could the game be heard outside, but the patrons were yelling and screaming during the game. The defendant has, on multiple occasions, hosted "Xtreme Bar Bingo" events where a microphone and amplification system were utilized to announce the game and made the happenings of the event audible outside of the building. Lastly, the defendant submitted but was denied a zoning amendment that would rezone the property to C-2 status. Attached to the motion, in relevant part, were sworn affidavits from all five plaintiffs, an annual sales report with food and beverage sale breakdowns, the defendant's responses to the request to admit, the request for zoning amendment filed after the commencement of the action, and minutes from a city council meeting that occurred on April 1, 2019.

¶ 9    The defendant's response did not dispute any of the facts outlined by the plaintiffs in the motion for partial summary judgment. Attached to the response was the defendant's business license and minutes from a city council meeting dated February 19, 2019. The defendant did not attach any other contradicting evidence.

¶ 10 The trial court held a hearing on the motion, during which the court specifically stated that it was only dealing with those issues that would be outside the purview of the complaint filed with the Commission. It also noted that the remedy resulting from the Commission's decision would be different than the remedy the court could impose. Particularly, the court noted that its ruling was based on the language of the zoning ordinance for a C-1 zoned district. Also, the court clarified that providing full waitress service outside constituted the sale of food or drink outside. In reference to this issue, the following colloquy occurred:

"THE COURT: Well, here's the thing. You just said that your clients don't serve food and beverage outside.
MR. LYTLE: They don't sell it outside.
THE COURT: Well, that's semantics.
MS. LORENZ: They take the cash and then—
THE COURT: That's semantics.
MS. LORENZ: —and they put it in a drawer inside.
THE COURT: Right. I mean, they have waitress service outside.
MS. LORENZ: Correct."

¶ 11 On August 14, 2019, the trial court entered a written order granting the plaintiffs' motion enjoining the defendant from serving food or drink outside, providing ancillary entertainment outside, or providing ancillary entertainment inside without a special use permit.

¶ 12 Thereafter, on August 19, 2019, the plaintiffs filed an emergency petition for rule to show cause as to why the defendant should not be held in contempt and motion for sanctions for continuing to violate the trial court's August 14 order. On August 21, 2019, the court entered another written order clarifying its August 14 order. In its order, it clarified the following:

6

"At the hearing of August 14, 2019, Counsel for Plaintiffs and Defendant specifically addressed the issue of whether consumption of food and beverages outdoors at the Property is permissible under the Municipal Code of the City of Columbia ('Code'). This Court ruled that such activities are not permissible pursuant to the Code, as Defendant is currently zoned, and the Court's Order of August 14, 2019 enjoins such activities.

At the hearing on August 14, 2019, Counsel for Plaintiffs and Defendant specifically addressed the issue of whether Defendant's activities, including the performance live music of any kind; the playing of programmed or recorded music of any kind; the playing of video of any kind, including without limitation live footage of sporting events, for viewing and/or listening; and the conducting of games and/or events such as 'Xtreme Bar Bingo,' constitute ancillary entertainment restricted by the Code. This Court ruled that such activities are ancillary entertainment restricted by the Code, as Defendant is currently zoned, and shall not occur outdoors at the Property, and require a special use permit to occur indoors at the Property.

During the August 20, 2019 conference call, Defendant's counsel indicated his intent to file a Motion to Reconsider this Court's August 14, 2019 Order, and requested the opportunity to present the Court with the City of Columbia's interpretation of the ordinances at issue. Plaintiffs' counsel objected to the introduction of any such additional evidence and/or materials in response to Plaintiffs' Motion for Partial Summary Judgment, given that the parties have fully briefed and argued said Motion, and the Court has made its ruling. Although Defendant may submit a Motion to Reconsider for the Court's consideration, the Court denies Defendant's request to submit additional materials regarding the City of Columbia's interpretation of the ordinances at issue, as this matter has been fully briefed and argued."

¶ 13 After the August 21 order, the defendant filed a motion to reconsider arguing that new evidence had come to light that the trial court should consider. Attached to the motion was a letter written by Scott Dunakey, the director of community development for the city of Columbia. The letter defined the terms of and expanded on the applicability of the Code that was interpreted by the court in the August 14 and August 21 orders. The defendant also attached the complaint for the Code violation that five of the plaintiffs in this matter filed with the Commission.

¶ 14    On September 3, 2019, the trial court held a hearing on the defendant's motion to reconsider. The defendant argued that the letter written by Scott Dunakey constituted an administrative interpretation of the ordinance and should therefore be given deference. During argument, the defendant acknowledged that any proceeding held in front of the Commission could result in a restriction, suspension, or modification of the defendant's liquor license, a remedy outside the purview of the court. After hearing argument, the court noted that the defendant's response in opposition to the motion for partial summary judgment "had no affidavits or depositions attached to it to establish a dispute in material fact." The court denied the motion to reconsider and, in making this decision, refused to consider the letter from Dunakey attached to the defendant's motion. It then heard argument on the petition for rule to show cause why the defendant should not be held in contempt and the motion for sanctions. The court found the defendant to be in contempt of its order and reserved its ruling on the motion for sanctions.

¶ 15    The defendant filed a notice of appeal as to the August 14 and August 21 orders. For the reasons that follow, we affirm.

¶ 16                                    II. ANALYSIS

¶ 17    As a preliminary matter, we note that the defendant has filed a motion to amend the notice of appeal to include the September 3 order denying the motion to reconsider. On November 20, 2019, this court issued an order directing that the motion be taken with the case. Illinois Supreme Court Rule 303(b)(5) (eff. July 1, 2017) allows for the notice of appeal to be amended "on motion, in the reviewing court." The motion must be filed "within 30 days after expiration of the time for filing a notice of appeal." Ill. S. Ct. R.

303(d) (eff. July 1, 2017). Here, the motion to reconsider was denied by the trial court on September 3, 2019. The notice of appeal was filed on September 13, 2019. The defendant filed a motion seeking leave to amend the notice of appeal on October 7, 2019, well within the deadline prescribed in Rule 303. Thus, the defendant's motion to amend the notice of appeal is granted, and the plaintiffs' motion to strike those portions of the defendant's brief referencing the September 3 order is likewise denied.

¶ 18    The next issue we must address is whether the plaintiffs failed to exhaust their administrative remedies when they filed their motion for partial summary judgment. Section 11-13-15 of the Illinois Municipal Code (65 ILCS 5/11-13-15 (West 2018)) vests in any owner or tenant located within 1200 feet of a property or building that is being misused with the power to, in addition to other remedies, institute any appropriate action or proceeding: "(1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use; (2) to prevent the occupancy of the building, structure, or land; (3) to prevent any illegal act, conduct, business, or use in or about the premises; or (4) to restrain, correct, or abate the violation." In any action or proceeding for the aforementioned purposes under this section, the court with jurisdiction thereof has the power and may in its discretion issue a permanent injunction. *Id.* The defendant argues that the trial court lacked subject matter jurisdiction to enter the permanent injunction because the plaintiffs had failed to exhaust their administrative remedies with the Commission. We disagree.

¶ 19    Here, the plaintiffs filed a complaint and subsequent motion for summary judgment as to the three counts alleging Columbia Code violations pursuant to procedure

9

prescribed in the Illinois Municipal Code. The motion for summary judgment listed the undisputed material facts and argued that the plaintiffs were entitled to judgment as a matter of law because the facts established that the defendant had violated the Columbia Code. The court thereafter issued a permanent injunction.

¶ 20 The equitable remedy available in filing a complaint for Columbia Code violations in the trial court, as prescribed by the Illinois Municipal Code, is a permanent injunction. The administrative remedy available in filing a complaint with the Commission is revocation or suspension of the licensee's liquor license, and possible fines. The Commission's authority to revoke a liquor license is separate from a court determining whether an ordinance has been violated. The Commission has no authority to grant an injunction, and as the trial court noted on the record, it does not have jurisdiction regarding revocation of a liquor license until a decision has been rendered by the liquor control commissioner and all administrative remedies available in appealing that decision are exhausted. Here, the court explicitly excluded any issue relating to the defendant's liquor license. The court's order applied only to those counts related to the violation of the Code by the defendant. Therefore, the plaintiff did not need to exhaust all administrative remedies related to the revocation of the defendant's liquor license before seeking an injunction enjoining the defendant from violating the Code.

¶ 21 The defendant cites *Todd v. Chaviano*, 2019 IL App (5th) 170081, in arguing that the plaintiffs were required to pursue the proceedings with the Commission before it filed a complaint with the trial court. That case is not applicable to this situation as the court here was not reviewing an administrative decision, like the court in *Todd*. *Id*. ¶ 23.

10

Instead, the court here was issuing a decision independent and separate from any administrative proceeding or remedy. The court was not reviewing the decision of an administrative agency, but instead itself ordered a permanent injunction under its own authority granted to it through the Illinois Municipal Code. See 65 ILCS 5/11-13-15 (West 2018). Though it is true that after the filing of the complaint in the court, all but one of the plaintiffs joined in filing an administrative complaint with the Commission, that action has no effect on the subject matter jurisdiction of the trial court on the issues relating to the permanent injunction. We find that the trial court had jurisdiction over those parts of the complaint that did not involve the defendant's liquor license. Therefore, the plaintiffs did not fail to exhaust their administrative remedies.

¶ 22    Next, we move to the merits of the case and must examine the record to determine whether there was a genuine issue of material fact in this case. Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517-18 (1993). In determining whether summary judgment is appropriate, the trial court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Id.* at 518. "A triable issue of fact exists where there is a dispute as to material facts or where the material facts are undisputed but reasonable persons might draw different inferences from those facts." *In re Estate of Hoover*, 155 Ill. 2d 402, 411 (1993). Summary judgment is a drastic means of disposing of litigation and should be

granted only where the right to it is clear and free from doubt. *Robinson v. Builders Supply & Lumber Co.*, 223 Ill. App. 3d 1007, 1013 (1991). We review a summary judgment ruling *de novo*. *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 909 (1994).

¶ 23 Based on our review of the record, there appears to be no factual dispute. The defendant admits to serving food and drink outside, to hosting Xtreme bar bingo, to hosting a St. Louis Blues watch party, to hosting a Kentucky Derby event, and to having live bands perform outside. The facts upon which the trial court based its ruling are undisputed. Therefore, the next step in our analysis is determining whether the plaintiffs were entitled to judgment as a matter of law.

¶ 24 The plaintiffs are entitled to summary judgment only if the undisputed facts violate the Code. In making this determination, we must decide whether the defendant's conduct violated the Code's prohibition against serving food or drink outside, providing ancillary entertainment outside, or providing ancillary entertainment inside without a special use permit. As the defendant has already conceded that it provided ancillary entertainment outside in violation of the Code when it hired live musicians to perform outside, we will not discuss that violation. We will only address whether the defendant served food or drink outside and whether the defendant provided ancillary entertainment inside without a special use permit.

¶ 25 An issue involving statutory interpretation is a question of law subject to *de novo* review. *Gibbs v. Madison County Sheriff's Department*, 326 Ill. App. 3d 473, 475 (2001). The primary goal of statutory interpretation is to ascertain and give effect to

12

the true intent of the legislature—here, the city of Columbia. *Id.* at 476. The best evidence of legislative intent is the language of the statute itself. *Id.* "When the language of a statute is clear and unambiguous, a court should not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express." *Id.* However, if the language of the statute allows for two possible interpretations, "it should be given the interpretation that is reasonable and that will not produce an absurd, unjust, or unreasonable result." *Id.*

¶ 26 The defendant argues that none of its aforementioned conduct violates the language of the Code. Specifically, the defendant argues that its business license and liquor license make it exempt from the Code's use restrictions because the business license lists the defendant as a "business" and there are no outside sale restrictions on its liquor license. This argument, however, is irrelevant. Any business operating in Columbia must not only abide by any licensing requirements but must also operate within the limitations of its zoning requirements and restrictions.

¶ 27 The defendant also argues that its actions do not violate the plain language of the Code. Here, the language of the Code provides that a condition of use under C-1 zoning is that "[t]he sale of foodstuffs or articles intended for human consumption on premises shall be conducted wholly within an enclosed building." The language of the Code is clear and unambiguous. The defendant attempts to define the Code so narrowly that it claims that the mere act of swiping a credit card indoors is enough to satisfy the requirement in the Code that all food and drink must be sold inside the establishment. This interpretation would result in absurdity and therefore is not a reasonable definition.

13

In support of its argument, the defendant relies heavily on the memorandum prepared by Scott Dunakey, the director of community development. However, we agree with the trial court that it would not have been proper to consider this memo because not only is it not one of the types of evidence—*i.e.*, the pleadings, depositions, or affidavits—that can be attached to a motion for summary judgment, but the information contained in the document was not available to the defendant at the time it filed its response to the plaintiffs' motion for summary judgment. We also note that should the legislative governing bodies of Columbia disagree with this court's interpretation of the language of it, they are free to amend the Code to reflect their intended definitions.

¶ 28 However, even assuming *arguendo* that the defendant is correct that there is more than one possible interpretation of this language, this court would not employ the defendant's interpretation as that would lead to an absurd result wherein a restaurant zoned for C-1 purposes could flout all limitations imposed by the Code in relation to full service of food and drink to customers outside the premises so long as a credit card was swiped or change was made inside the walls of the premises.

¶ 29 Additionally, in support of this court's interpretation of the Code, section 17.28.010 entitled "Permitted uses and uses permitted by special use only permit" lists the permitted uses of buildings or land located in a C-2 district. Columbia Municipal Code § 17.28.010(A) (amended May 16, 2012). Notably, item 49 lists "lounges, taverns, and pubs" as permitted uses of a building in a C-2 district; item 68 of that same list allows for "restaurants, tea rooms and cafes ***." *Id*. § 17.28.010(A)(49), (68). The plain language of the statute indicates that these two items are independent from one

14

another and have different meanings. It is also important to note that the Code lists only 16 permitted uses of a building or land in a C-1 zoning district and 86 permitted uses for a C-2 zoning district. See Columbia Municipal Code § 17.26.020(A) (amended Mar. 20, 2006); Columbia Municipal Code § 17.28.010(A) (amended May 16, 2012). It is clear from the Code that a C-1 district is a more limited district in terms of permitted uses than a C-2.

¶ 30   Accordingly, we find the defendant's interpretation unpersuasive and absurd. Therefore, in applying the plain language of the statute, we find that the defendant's conduct did in fact violate the restrictions of the Code where it served and allowed the consumption of food and drink outside the walls of its building as this conduct constitutes the "sale of foodstuffs or articles intended for human consumption" outside of the premises.

¶ 31   Applying the same analysis and reasoning as above, we similarly find that the defendant provided ancillary entertainment inside its establishment without a special use permit when it hosted a Kentucky Derby viewing party, a Blues viewing party, and Xtreme bar bingo. After our review of the statute, we find that the defendant has violated the Code and that an injunction in the plaintiffs' favor enjoining the defendant from serving food and drink outside, providing ancillary entertainment outside, and providing ancillary entertainment inside without a special use permit is appropriate.

¶ 32                                   III. CONCLUSION

¶ 33   Therefore, we hereby affirm the circuit court of Monroe County in granting the plaintiffs' motion for partial summary judgment.

15

¶ 34    Affirmed.