2019 IL App (1st) 181205

No. 1-18-1205

Fourth Division
March 21, 2019

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| PAUL LINDBLAD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| v. | ) | |
| | ) | No. 16 L 3730 |
| JONATHAN S. NELSON and INGRID NELSON, | ) | |
| | ) | The Honorable |
| Defendants | ) | Margaret Brennan, |
| | ) | Judge Presiding. |
| (Ingrid Nelson, | ) | |
| Defendant-Appellee). | ) | |
| | ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Reyes and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     The instant appeal arises from plaintiff Paul Lindblad's lawsuit against defendants Jonathan S. Nelson (Jonathan) and Ingrid Nelson (Ingrid), in which plaintiff alleged that Jonathan, with the help of Ingrid, committed financial fraud against plaintiff. The only count at issue on appeal is a civil conspiracy count against Ingrid, which was the subject of a summary judgment motion, which was granted by the trial court. On appeal, plaintiff claims that the trial court erred in granting summary judgment. For the reasons that follow, we reverse and remand for additional proceedings.

¶ 2                                        BACKGROUND

¶ 3                                         I. Complaint

¶ 4        On April 13, 2016, plaintiff filed a verified complaint against both defendants; the complaint was amended three times, and it is the third amended complaint that is the subject of this appeal. In the third amended complaint, plaintiff alleged that he was employed as a church organist and choir director for St. John Lutheran Church. In addition to his salary from the church, plaintiff had inherited various stocks and bonds, which provided him with annual dividend returns; however, plaintiff did not have any education or knowledge regarding managing these assets and did not actively monitor them or conduct any trades. Plaintiff also had difficulty keeping track of the various assets and preparing his income tax returns.

¶ 5        The complaint alleged that, in plaintiff's capacity as the church's choir director, he met Jonathan in 2008, when Jonathan joined the church choir. Plaintiff and Jonathan became friendly over the years and "[p]laintiff grew to trust [Jonathan] and considered him a close friend." Jonathan informed plaintiff that he was a "professional trader" working at Illinois Agricultural and Financial Trading (Illinois Agricultural); he later represented to plaintiff that he owned Illinois Agricultural with a partner. Jonathan further informed plaintiff that he owned and operated a business that prepared income tax returns for individuals. During the course of 2009, plaintiff and Jonathan spoke about plaintiff's organizing his finances and plaintiff asked Jonathan to refer him to someone who could assist plaintiff with the filing of his income taxes. Jonathan offered to help plaintiff organize his finances, to help complete plaintiff's income tax returns, and to increase plaintiff's retirement savings by establishing and managing a trading account for plaintiff. Plaintiff inquired if Jonathan could also

establish an account where all of plaintiff's stock dividends could be deposited and held in order to better consolidate them and keep them organized for tax reporting purposes.

¶ 6    According to the complaint, plaintiff and Jonathan orally agreed that Jonathan would prepare plaintiff's income taxes and that Jonathan would open two accounts for plaintiff. First, Jonathan would open and manage a trading account for plaintiff in order to increase his retirement savings, which would require an initial investment of $25,000, which was to be paid by selling some of plaintiff's stocks. Plaintiff and Jonathan would each receive 10% of the "proceeds"[1] of the trading account, with the remaining "proceeds" being reinvested into the account. Second, Jonathan would open and manage a "holding" account, into which all of plaintiff's stocks and bonds would be deposited; the only activity in this account was to be the occasional sale of stock to raise money for outstanding debts or taxes as authorized by plaintiff. Initially, Jonathan would sell enough stock to pay for plaintiff's credit card debts, outstanding income and real estate property taxes, and to raise the initial $25,000 investment for the trading account. Jonathan was not authorized to sell any other stocks or bonds without the consent of plaintiff.

¶ 7    Plaintiff alleged that Jonathan opened two accounts on plaintiff's behalf,[2] but that plaintiff was not permitted access to them. Instead, between 2010 and 2015, Jonathan intentionally misrepresented the status, activity, and value of the accounts. For instance, from 2010 through 2011, a total of approximately $117,000 was transferred to plaintiff's personal checking account "ostensibly to cause the Plaintiff to believe that [Jonathan] was making proceeds"; at least one of these transfers was made by Illinois Agricultural, the business that

---

[1]When plaintiff alleges the word "proceeds," we assume he means "profits."
[2]According to the complaint, the holding account was opened through OptionsXpress, a "futures commissions merchant," while the trading account was through Gain Futures (formerly known as Open E Cry).

Jonathan purportedly owned. Additionally, Jonathan informed plaintiff that the net value of plaintiff's assets had increased to $280,000, but that the assets were unavailable to plaintiff "because the IRS had applied a levy to all of Plaintiff's assets as a result of past due taxes."

¶ 8        According to the complaint, in June 2014, Jonathan informed plaintiff that he would no longer be able to prepare plaintiff's income tax returns. In May 2015, the IRS sent plaintiff an "intent to levy his salary and assets," which "caused Plaintiff to question the conduct and representations made by [Jonathan] as Plaintiff was under the impression that there was a continuous levy from 2012." Plaintiff requested access to all of his financial and tax documents, as well as his accounts, from Jonathan. Jonathan provided plaintiff with false information and refused to provide plaintiff access to his accounts. Consequently, in May 2015, plaintiff approached OptionsXpress and Gain Futures, the companies through which the accounts had been opened, and requested access to his accounts, which he was eventually granted.

¶ 9        Plaintiff discovered that Jonathan had been trading with the assets in the OptionsXpress "holding" account, which was intended to be a passive account, and, between June 2010 and June 2011, Jonathan had sold all of plaintiff's stocks and bonds, with a value in excess of $519,000, without plaintiff's knowledge or consent, and had transferred the proceeds to the Gain Futures trading account. Furthermore, Jonathan had lost the entirety of these proceeds, including $473,000 in trading losses in plaintiff's account, and had paid himself a "commission" from the accounts, despite the fact that he had not made any profit trading in the trading account. Plaintiff alleged that, by 2015, he was left with $30 in the holding account and $100 in the trading account. Plaintiff alleged that Jonathan had listed his own email address and residence on the accounts, not plaintiff's, so all information and statements

concerning the accounts were delivered to Jonathan and not to plaintiff. Plaintiff also discovered that, despite his promises to do so, Jonathan had not filed plaintiff's tax returns from 2009 through 2013. This led to the IRS completing the returns for 2009, 2010, and 2011, "which resulted in a substantial amount of late payment, penalty and interest fees." Finally, Jonathan had informed plaintiff that he had paid a real estate property tax bill on plaintiff's behalf and had provided plaintiff with email confirmation that the taxes had been paid. However, Jonathan never paid the real estate taxes, resulting in the real estate taxes being sold and "plac[ing] the Plaintiff's home in jeopardy and creat[ing] more problems and debt owed by Plaintiff to the taxing authorities."

¶ 10    Additionally, with respect to Illinois Agricultural, the business that Jonathan purportedly owned, the complaint alleged that Jonathan did not actually own the business. Instead, Jonathan and Ingrid, his mother, agreed to fund a sole proprietorship named "Ingrid Nelson d/b/a Illinois Agricultural and Financial Trading" for the purposes of establishing a business entity through which Jonathan could act as a professional securities and commodities trader and investment advisor for clients; the complaint refers to this agreement as the "Illinois Agricultural Agreement." In furtherance of this agreement, Ingrid opened a business checking account on May 5, 2009. On the bank's records, Ingrid is listed as the "owner" of the business, the contact information of the business was Ingrid's personal contact information, and Ingrid was the only authorized signatory on the business account. The complaint alleged that, on information and belief, and in furtherance of the agreement between Jonathan and Ingrid, transfers of funds into and out of the business account via wire transfer and deposit slips were to be authorized and initiated by Ingrid. The complaint further alleges that, on information and belief, as part of this agreement, Ingrid and Jonathan

discussed the fact that clients of Illinois Agricultural would deposit funds into the account for trading purposes.

¶ 11     The complaint set forth five counts: (1) count I, common law fraud against Jonathan; (2) count II, breach of fiduciary duty against Jonathan; (3) count III, civil conspiracy against Jonathan and Ingrid; (4) count IV, in the alternative, *respondeat superior* against Ingrid; and (5) count V, in the alternative, negligent supervision against Ingrid. As only count III is at issue on appeal, we discuss only that count in detail. The count incorporated the allegations set forth above concerning the factual underpinnings of the cause of action. Count III alleged that Jonathan and Ingrid "acted in concert for the lawful creation of a sole proprietorship, ILLINOIS AGRICULTURAL under INGRID NELSON's name, address, and tax identification number (i.e. social security number) for the business of 'Commodities Trading' pursuant to the ILLINOIS AGRICULTURAL AGREEMENT." However, count III alleged that, in violation of the Illinois Securities Law of 1953 (Securities Law) (815 ILCS 5/1 *et seq.* (West 2008)), Ingrid, Jonathan, and Illinois Agricultural were not registered to trade securities or commodities with the Secretary of State. Count III further alleged that Ingrid deposited client funds into the Illinois Agricultural account for trading purposes, when she knew that the business was not registered and that she used client funds, including plaintiff's funds, for her own personal use.

¶ 12     Count III alleged that "[a]s a result of the ILLINOIS AGRICULTURAL AGREEMENT, and INGRID NELSON's assistance demonstrated by the Checks and Withdrawal Slips, [Jonathan] was able to continue to make misleading and fraudulent statements to Plaintiff and breach his fiduciary duty owed to Plaintiff as set forth in [count I] of this Third and Final Amended Complaint and incorporated herein." Plaintiff acknowledged that he had not had

any face-to-face interactions with Ingrid, but alleged that "the Checks and Withdrawal Slips demonstrate that she was a willing participant in the ILLINOIS AGRICULTURAL AGREEMENT, which furthered and allowed [Jonathan's] illicit activities," which were "intended to advance the overall scheme of the ILLINOIS AGRICULTURAL AGREEMENT."

¶ 13                    II. Motion for Summary Judgment

¶ 14       On February 8, 2018, Ingrid filed a motion for summary judgment on counts III and V of the third amended complaint. With respect to count III, Ingrid argued that the complaint solely alleged a conspiracy to open and operate an investment advising firm while knowingly failing to register the business with the Secretary of State. However, Ingrid claimed that Ingrid, Jonathan, and Illinois Agricultural were exempt from the registration requirement. Ingrid further argued that, "[t]o be clear, the Complaint does not allege conspiracy to defraud" and that plaintiff had not alleged that there had been any agreement to defraud.

¶ 15       Attached to the motion for summary judgment was the affidavit of Jonathan, in which he averred that Illinois Agricultural had only two clients, one of whom was plaintiff.

¶ 16       In response, plaintiff argued that Ingrid's reading of the complaint—that the sole conspiracy was to open an unregistered investment advising firm—was too narrow and that the complaint also included allegations showing that Ingrid participated in the scheme to defraud plaintiff. Plaintiff claimed that Ingrid's opening and drawing from the Illinois Agricultural account assisted Jonathan in his fraud and that her conduct could lead a trier of fact to determine that she knowingly assisted Jonathan in defrauding plaintiff.

¶ 17       Attached to plaintiff's response were a number of exhibits, including copies of checks compiled by plaintiff, showing that he had paid a total of $119,099 to Illinois Agricultural

between 2010 and 2012. Also attached to the response was an excerpt from the deposition of Ingrid, taken in connection with a different case, in which she testified that she opened the Illinois Agricultural bank account at Jonathan's direction, as well as Ingrid's deposition from the instant case, in which she testified the same way. Ingrid further testified that she had no recollection of writing checks or withdrawing money from the bank account, but admitted that the signatures on withdrawal slips appeared to be hers.

¶ 18    In her reply, Ingrid argued that plaintiff was attempting to "rewrite" the complaint and assert a new theory, which was inappropriate.

¶ 19    On April 19, 2018, the trial court granted summary judgment in Ingrid's favor on both counts III and V; the court's order does not provide its reasoning, and there is no transcript or bystander's report from the hearing contained in the record on appeal. On May 10, 2018, the trial court entered an agreed order in which plaintiff voluntarily dismissed count IV against Ingrid, which was the only remaining count against her, and also found that all claims against Ingrid had been adjudicated or dismissed and there was no just reason for delaying appeal of the claims directed against her. On May 17, 2018, the trial court entered an agreed order, entering judgment in favor of plaintiff and against Jonathan in the amount of $100,000. On June 6, 2018, plaintiff filed a notice of appeal, appealing only the dismissal of count III of the third amended complaint.

¶ 20                                        ANALYSIS

¶ 21    On appeal, plaintiff argues that the trial court erred in granting summary judgment on count III of the third amended complaint. A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 22    "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 23    In the case at bar, count III alleged a civil conspiracy. " 'Civil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted

action either an unlawful purpose or a lawful purpose by unlawful means.' " *Karas v. Strevell*, 227 Ill. 2d 440, 466 (2008) (quoting *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994)). Thus, "[i]n order to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999) (citing *Adcock*, 164 Ill. 2d at 62-64).

¶ 24   Ingrid moved for summary judgment on count III based on her claim that the "agreement" alleged by the complaint was an agreement to open and manage an unregistered investment trading firm, despite knowing that such a firm was required to be registered. Plaintiff's response is that this reading of his complaint is overly narrow and that he, in fact, also alleged a conspiracy to defraud plaintiff. "A plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in his complaint." *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 911 (1994). Thus, in ruling on a motion for summary judgment, the court looks to the pleadings to determine the issues in controversy. *Pagano*, 257 Ill. App. 3d at 911. "If the defendant is entitled to judgment as a matter of law on the claims as pled by the plaintiff, the motion will be granted without regard to the presence of evidentiary material which might create a right of recovery against the moving defendant on some unpled claim or theory." *Pagano*, 257 Ill. App. 3d at 911. However, "[p]leadings are not intended to create obstacles of a technical nature to prevent reaching the merits of a case but rather to facilitate the resolution of real and substantial controversies." (Internal quotation marks omitted.) *Papadakis v. Fitness 19 IL 116, LLC*, 2018 IL App (1st) 170388, ¶ 21. Thus, we construe pleadings liberally "with a view to doing substantial justice between the parties." *Papadakis*, 2018 IL App (1st) 170388, ¶ 21.

¶ 25    In the case at bar, in count III, after setting forth the law concerning the elements of a civil conspiracy claim, plaintiff alleged:

> "[Jonathan] and INGRID NELSON acted in concert for the lawful creation of a sole proprietorship, ILLINOIS AGRICULTURAL under INGRID NELSON's name, address, and tax identification number (i.e. social security number) for the business of 'Commodities Trading' pursuant to the ILLINOIS AGRICULTURAL AGREEMENT."

Count III further alleges that Jonathan and Ingrid "acted unlawfully in the following ways," then set forth (1) that Ingrid, Jonathan, and Illinois Agricultural were not registered with the Secretary of State as required by law, (2) that Ingrid used client funds for her own personal use, and (3) that Ingrid transferred funds to trading houses and accepted money for trading purposes, despite knowing that the business was unregistered. Count III alleged that Ingrid's participation in the "ILLINOIS AGRICULTURAL AGREEMENT" furthered Jonathan's unlawful activities in defrauding plaintiff.

¶ 26    Although the complaint is inartfully drafted, we agree with plaintiff that it is overly narrow to read the complaint as alleging only a conspiracy to establish an unregistered investment firm. It is clear that "[o]nce a defendant knowingly agrees with another to commit an unlawful act or a lawful act in an unlawful manner, that defendant may be held liable for any tortious act committed in furtherance of the conspiracy, whether such tortious act is intentional or negligent in nature." *Adcock*, 164 Ill. 2d at 64. In the case at bar, count III alleged that the "agreement" at issue for the purposes of the conspiracy count was the creation of Illinois Agricultural for the business of commodities trading. Earlier in the

complaint, the complaint set forth the basis of the formation of Illinois Agricultural, which it referred to as the "Illinois Agricultural Agreement."

¶ 27    The complaint alleged that Jonathan and Ingrid agreed to create Illinois Agricultural for the purposes of establishing a business entity through which Jonathan could act as a professional securities and commodities trader and investment advisor for clients. In furtherance of this agreement, Ingrid opened a business checking account on May 5, 2009. On the bank's documentation, Ingrid is listed as the "owner" of the business, the contact information of the business was Ingrid's personal contact information, and Ingrid was the only authorized signatory on the business account. The complaint alleged that, on information and belief, and in furtherance of the agreement between Jonathan and Ingrid, transfers of funds into and out of the business account via wire transfer and deposit slips were to be authorized and initiated by Ingrid. The complaint further alleges that, on information and belief, as part of this agreement, Ingrid and Jonathan discussed the fact that clients of Illinois Agricultural would deposit funds into the account for trading purposes.

¶ 28    Additionally, the count of fraud directed at Jonathan alleged that Jonathan made numerous false statements of material fact to plaintiff when, *inter alia*, he knowingly misrepresented to plaintiff that he was a registered investment advisor, that "he was [a] seasoned and savvy investor," that he owned Illinois Agricultural, that Illinois Agricultural "was a legitimate investment company registered with the State of Illinois," and that plaintiff's funds "were increasing in value through [Jonathan's] trading with ILLINOIS AGRICULTURAL."

¶ 29    We also note that the allegations in the verified complaint, in the documents submitted in support of the complaint, and in the briefing on the motion for summary judgment make clear

that the establishment of Illinois Agricultural occurred at the same time as Jonathan's conversations with plaintiff about his finances and its operation was very limited in scope. Plaintiff spoke to Jonathan about his finances and income taxes "[o]ver the course of 2009," and during these conversations, Jonathan offered to assist plaintiff. On May 5, 2009, in furtherance of the "Illinois Agricultural Agreement," Ingrid opened the bank account as "Ingrid Nelson d/b/a Illinois Agricultural and Financial Trading." Ingrid's application for a business overdraft protection credit line indicated that the purpose of the business was "commodities trading," that the business had been in business "0" years, and that the total sales and income the prior year were both "0." Jonathan averred in his affidavit that from 2009 to 2015, Illinois Agricultural had only two clients, one of whom was plaintiff.[3]

¶ 30        As noted, in reviewing a motion for summary judgment, a court must view the pleadings, depositions, and affidavits in the light most favorable to the nonmoving party. *Home Insurance Co.*, 213 Ill. 2d at 315. In the case at bar, viewing the complaint in the light most favorable to plaintiff, we agree with plaintiff that count III encompasses an allegation that there was a conspiracy to defraud plaintiff. Count III establishes the "agreement" as the agreement to establish Illinois Agricultural for purposes of commodities trading. The complaint alleges that Jonathan's "trading" involved unauthorized trades and the concealment of losses, which was fraudulent and which was done through the use of the Illinois Agricultural account. Finally, the timing of the creation and operation of Illinois Agricultural could certainly lead to an inference of questionable conduct—the business was

---

[3]We also note that, with respect to the other client, on December 29, 2014, the Secretary of State entered an order of prohibition against Jonathan and Illinois Agricultural after finding that Jonathan had violated several sections of the Securities Law, including sections prohibiting fraudulent conduct. Specifically, the Secretary of State found that Jonathan had lost most of the client's funds through bad trading and had concealed those losses by providing false and misleading account statements to the client, as well as commingling the client's funds with those of Illinois Agriculture.

established shortly after plaintiff and Jonathan had been discussing plaintiff's need for financial expertise and had plaintiff as essentially its only client, and there is no evidence that Jonathan had the ability to trade shares of stock and prepare income tax returns. Thus, there is a reasonable inference that Ingrid knew or should have known that the account she set up was to be used to defraud plaintiff. The account was created in Ingrid's name, she was the sole signatory on the account, and her signature appears on all of the checks and withdrawal slips—certainly, an individual is presumed to have knowledge of the activities of her own business, especially where, as here, it is a sole proprietorship and she is the only one authorized to move funds into and out of the business' bank account.

¶ 31       We agree with Ingrid that the complaint is not well-drafted, but her motion is not a motion to dismiss, it is a motion for summary judgment, which declares that there is no factual issue in this case for the court to decide. We cannot say that in the case at bar. However, we construe pleadings liberally "with a view to doing substantial justice between the parties." *Papadakis*, 2018 IL App (1st) 170388, ¶ 21. Additionally, "[s]ummary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. Here, we cannot say that this standard has been satisfied. We make no comment on whether plaintiff will ultimately be able to prove his allegations. " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager*, 328 Ill. App. 3d at 708 (quoting *Luu*, 323 Ill. App. 3d at 952). In the case at bar, plaintiff has sufficiently raised the issue of a conspiracy to defraud such that summary judgment should not have been granted.

¶ 32                                          CONCLUSION

¶ 33            For the reasons set forth above, summary judgment in favor of Ingrid on count III should

not have been granted.

¶ 34            Reversed and remanded for additional proceedings.