2024 IL App (1st) 221016

SECOND DIVISION
June 11, 2024

No. 1-22-1016

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| BRIAN D. FINN and NORTH AMERICAN INSTALL, LLC, an Illinois Limited Liability Company, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | Case Nos.    15 L 11963 |
| | ) | 16 CH 165 |
| PROJECT RESOURCE SOLUTIONS, LLC, an Illinois Limited Liability Company; IVEN ROSHEIM; SUSAN SCHACHT; and MICHAEL ROONEY, | ) ) ) ) | Honorable Diane Shelley, Thomas Donnelly, |
| Defendants. | ) ) | Judges Presiding |
| (Project Resource Solutions, LLC, and Iven Rosheim, Defendants-Appellants.) | ) ) | |

_____

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice McBride concurred with the judgment and opinion.

**OPINION**

¶ 1    Defendants Iven Rosheim and Project Resource Solutions, LLC (PRS), appeal two judgments entered against them after a joint jury and bench trial—one on the jury verdict and the other on the bench trial. First, the jury returned a $235,000 verdict against them on plaintiff Brian D. Finn's defamation *per se* claims. The court then entered its judgment on Finn's remaining claim under the Illinois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/1 *et seq.* (West 2012)). While the court ruled that Finn's Wage Act claim failed, it instead

awarded him approximately $24,000 in *quantum meruit*/unjust enrichment damages—a theory he never pleaded.

¶ 2      On appeal, defendants challenge both judgments. First, they claim the jury verdict must be reversed because the court failed to properly instruct the jury regarding the law of defamation, particularly on the issue of qualified immunity. As to the *quantum meruit* judgment, their argument is simple: the court cannot render judgment on an unpleaded theory.

¶ 3      We agree on the latter point. Unfortunately for defendants, however, we agree with Finn's contention that defendants forfeited their challenge to the jury instructions. For the reasons stated below, we affirm the court's judgment on the jury verdict and reverse its *quantum meruit* award.

¶ 4                                    BACKGROUND

¶ 5      The issues in this appeal revolve around a bifurcated trial in which Finn's claim for defamation *per se* was tried to a jury, while his Wage Act claim was tried to the bench. Though there was no court reporter present for those proceedings, the parties prepared an agreed statement of facts pursuant to Illinois Supreme Court Rule 323(d) (eff. July 1, 2017). We draw most of our background from that agreed statement.

¶ 6      But for reasons that will become clear, our resolution of this case does not depend on minute details of trial testimony. So we will endeavor to keep our discussion abbreviated.

¶ 7      PRS is a tech company that installs network and telephone hardware for its customers. Rosheim was one of three people who owns and operates PRS. Finn worked for PRS from 2005 until his termination in 2015. During his decade there, Finn held several positions, eventually becoming the Vice President of National Accounts (VP) in 2013. Around the time he became

VP, Finn and PRS entered into a written compensation contract. As part of this agreement, Finn was entitled to commissions and reimbursement of certain expenses.

¶ 8 By mid-2015, the parties' relationship had deteriorated. Finn testified that he began to have concerns over unpaid commissions and expense reimbursements he believed were due to him. For example, he believed that Rosheim intended to record a 2015 sale in 2016, which negatively affected his 2015 commissions. Finn confronted Rosheim on this point, which, in Finn's opinion, led to his termination in mid-2015.

¶ 9 In November 2015, Finn brought a claim under the Wage Act, alleging that he was owed the unpaid compensation about which he confronted Rosheim. Meanwhile, Finn tried to find a new job but was unsuccessful. Ultimately, he decided to start his own information technology and telecommunications company, North American Install (NAI), in December 2015. Finn recruited to his new company the business of clients whom he had brought to PRS while working there, such as the ShopperTrak account and others. He also hired Ross Rasmussen, a PRS project manager who worked extensively on the ShopperTrak account.

¶ 10 Through a friend, Nick Hantzis, Finn learned that Rosheim held a company-wide meeting on December 15, 2015. According to the friend, at the meeting, Rosheim claimed Finn was terminated because he was not showing up for work and had made unauthorized purchases on the company credit card.

¶ 11 According to Hantzis, at this December meeting Rosheim also claimed to have text messages proving Finn had spent the last two or three years plotting to create his own company and steal PRS clients. Rosheim insisted that Finn was violating his noncompete and nondisclosure agreements. Rosheim believed NAI would soon be bankrupted by the lawsuit he

was going to bring against it. Rosheim also allegedly "encouraged" his employees to warn contractors that they would not receive any more PRS work if they worked with NAI.

¶ 12    After learning of this December meeting, Finn filed a second lawsuit in January 2016, alleging several claims, including defamation *per se*. Over the next several years, Finn's claims were whittled down so that only a few proceeded to trial. (Of the claims that proceeded to trial, this appeal only concerns the two that went to judgment: the defamation *per se* claim and the Wage Act claim.)

¶ 13    In both April and September 2021, the parties filed written submissions on jury instructions and motions *in limine*. Both times, defendants filed written "Objections to Plaintiffs' Proposed Jury Instructions." In these written submissions, the defendants argued that the plaintiff's instructions did not adequately instruct the jury regarding defamation *per se*. Defendants also proposed their own instructions, to which Finn objected.

¶ 14    On the eve of trial, the parties argued pretrial motions and instructions. (This November 29 hearing was the one proceeding for which we do have a transcript.) Defendants' counsel, as in their prior written submissions, argued that Finn's proposed instructions misstated the law regarding defamation *per se* and "the issue of privilege."

¶ 15    Ultimately, the court ordered Finn to redraft several of the defamation instructions, giving defendants the opportunity to "critique the issue instruction that Plaintiff will present tomorrow." In preliminarily refusing defendants' instructions on the issue, the court explicitly ruled that "I'm refusing these at this time, but all of this is contingent on what issue instruction is provided the Court. *So if you don't believe these are addressed in the issue instructions, you can bring it back up*." (Emphasis added.)

¶ 16    That is the last time the record speaks on the subject. The parties returned to court the next day—November 30—for jury selection. The parties' agreed statement of facts does not indicate whether defendants accepted the court's invitation to object or otherwise revisit the jury instructions as revised overnight by Finn. The agreed statement of facts says only this: "Following the November 29, 2021 arguments on motions *in limine* and jury instructions, jury selection proceeded on November 30, 2021." As to instructing the jury: "The court instructed the jury. The court then sent the jury off to begin deliberation."

¶ 17    After deliberations, the jury returned a $235,000 verdict in favor of Finn on the defamation claim. The court did not immediately enter judgment, ordering the parties to file written arguments regarding Finn's remaining Wage Act claim. Before their arguments were due, Finn filed a motion for leave to amend his Wage Act claim "to conform with the trial evidence." In that motion, Finn doubled down on his theory under the Wage Act and claimed that he proved he was entitled to additional unpaid compensation under the Act. (The court ultimately denied this motion in its judgment order.)

¶ 18    When the parties finally submitted their written trial briefs, Finn exclusively argued that he had proven his Wage Act claim and that he was entitled to damages under the Wage Act. For their part, defendants argued that Finn had not proven the existence of a contract or agreement, which is a prerequisite to recovery under the Wage Act. See *Catania v. Local 4250/5050 of the Communications Workers of America*, 359 Ill. App. 3d 718, 724 (2005) (Wage Act claim requires proof of contract or some agreement).

¶ 19    In mid-December, the court entered judgment on the jury verdict and took the Wage Act claim under advisement. Two weeks later, the court entered judgment in favor of Finn, but not under the Wage Act. Instead, the court ordered that "[j]udgment is entered in favor of Brian Finn

and against defendant PRS in the amount [of] $23,483.09 for services provided in 2014 and 2015 *under a theory of unjust enrichment.*" (Emphasis added.)

¶ 20     The court reached this conclusion after agreeing with defendants that Finn's Wage Act claim failed: "there was no oral agreement because there was no evidence of acceptance of an exact offer and a meeting of the minds as to the terms of the agreement." The court further wrote that "Finn argues that even if there was no 2014 agreement, this court should apply the terms of the agreement under a theory *of quantum meruit*/unjust enrichment." The court refused to superimpose the equitable theory of *quantum meruit* into the Wage Act but, reasoning that Finn had proven that he had performed some work deserving of compensation, concluded that he was entitled to *quantum meruit* relief under the common law.

¶ 21     Complicating matters, the judge presiding over the trial retired shortly after entering judgment on Finn's claims. Post-trial motions were heard by a different judge.

¶ 22     In their post-trial motions, defendants challenged the jury verdict by arguing, among other things, that the court erred by providing the jury with faulty instructions on defamation *per se*. Finn responded, much as he does here, that defendants forfeited their challenge to the jury instructions.

¶ 23     While Finn was obviously happy with the jury verdict on his defamation claim, he challenged the court's denial of his Wage Act claim. Defendants, for their part, argued (as here on appeal) that the court erred by awarding equitable relief on an unpleaded claim.

¶ 24     In ruling on all the post-trial motions, the new judge did not address whether defendants had forfeited their challenge to the jury instructions. Instead, it addressed the merits, concluding that "Rosheim fails to show the given instructions misled the jury and resulted in prejudice." Regarding the *quantum meruit*/unjust enrichment award, the court relied on *Edens View Realty &*

*Investment, Inc. v. Heritage Enterprises, Inc.*, 87 Ill. App. 3d 480 (1980), to conclude that the circuit court had the authority to enter judgment in Finn's favor on that quasi-contractual relief even though he had not pleaded it in his complaint.

¶ 25     Thus finding no error, the court denied all the post-trial motions. Defendants timely appealed, challenging the defamation and *quantum meruit*/unjust enrichment judgments. Finn did not cross-appeal.

¶ 26                                    ANALYSIS

¶ 27                                         I

¶ 28     We begin with defendants' challenge to the jury award on Finn's defamation claim. To establish defamation, the plaintiff must prove that (1) the defendant made a false statement about the plaintiff, (2) the defendant published that false statement to a third party, and (3) the published statement damaged the plaintiff's reputation. *Project44, Inc. v. FourKites, Inc.*, 2022 IL App (1st) 210575, ¶ 21, *aff'd*, 2024 IL 129227, ¶ 31; *Goldberg v. Brooks*, 409 Ill. App. 3d 106, 110 (2011). To establish defamation *per se*, which presumes damages, the allegedly false statement must fit into one of the five categories recognized under Illinois law, including two that are alleged here: imputing a lack of integrity in the discharge of one's employment and a lack of ability to conduct in business in one's chosen profession. See *Green v. Rogers*, 234 Ill. 2d 478, 491-92 (2009).

¶ 29     But the law recognizes privileges, both absolute and qualified, to protect defendants from defamation liability under certain circumstances. *Project44*, 2022 IL App (1st) 210575, ¶ 47. As the only issue here is qualified privilege, we limit our discussion accordingly.

¶ 30     The purpose of a qualified privilege is to protect honest communications of incorrect information in certain circumstances to facilitate the availability of correct information. *Dent v.*

*Constellation NewEnergy, Inc.*, 2022 IL 126795, ¶ 30; *Kuwik v. Starmark Star Marketing &*
*Administration, Inc.*, 156 Ill. 2d 16, 24 (1993). A privileged communication is one that may be
defamatory and actionable except for the circumstances under which the communication is
made, typically one that society deems of sufficient importance that a free exchange of
information is critical. *Dent*, 2022 IL 126795, ¶ 30. For example, we have sometimes found
conversations in a business or employment setting regarding the conduct of other employees to
be protected by a qualified privilege. See, *e.g.*, *Popko v. Continental Casualty Co.*, 355 Ill. App.
3d 257, 264 (2005); *Larson v. Decatur Memorial Hospital*, 236 Ill. App. 3d 796, 799 (1992);
*Miller v. Danville Elks Lodge 332*, 211 Ill. App. 3d 145, 153 (1991).

¶ 31    A key point for our purposes is that a qualified privilege elevates a defamation plaintiff's
burden of proof. *Dent*, 2022 IL 126795, ¶ 30. In the absence of qualified privilege, a plaintiff
need only show that the defendant acted with negligence in making the defamatory statement. *Id.*
Once a defendant establishes a qualified privilege, however, a plaintiff must show malice—that
is, a direct intention to injure the plaintiff or a reckless disregard of the plaintiff's rights and the
resulting harm to the plaintiff. *Id.*; *Kuwik*, 156 Ill. 2d at 26, 30.

¶ 32    That is where the rubber meets the road here. Defendants claim that the trial court failed
to properly instruct the jury on qualified privilege and malice.[1]

---

[1]In their opening brief on this point of error, defendants make a few scattered references to the
denial of their (oral) motion for directed verdict and the denial of their motion for judgment
notwithstanding the verdict (JNOV). But as best we can discern, the argument regarding qualified
privilege and malice always leads back to the discussion of faulty jury instructions. And defendants do
not pray for outright reversal, which would be the result if we agreed that a directed verdict or JNOV
should have been entered; they merely seek a new trial based on instructional error. To the extent
defendants intended to raise a freestanding (though related) argument that the trial court erred in not
granting a directed verdict or JNOV, that argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1,
2020).

¶ 33    Finn responds that defendants forfeited any claim of instructional error because they "agreed" to the instruction or, at a minimum, the record does not show that they objected to these final jury instructions. See *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 557 (2008) ("A party forfeits the right to challenge a jury instruction that was given at trial unless it makes a timely and specific objection to the instruction and tenders an alternative, remedial instruction to the trial court.").

¶ 34    Defendants, though acknowledging the absence of a report of proceedings that affirmatively documents any objection, argue that "the proceedings leading up to and after the trial *** show that Rosheim continually and timely voiced his opposition to the proposed instructions." That reply is true as far as it goes but a bit short of responsive. It is undeniably true that defendants raised objections to the jury instructions during pretrial proceedings, but it also true that the day before trial—November 29—the court gave Finn an opportunity to amend his instructions overnight, and the court advised defendants that they would have another opportunity to object after seeing them the following day:

> "THE COURT: Yes. I just think [defendants' proffered instruction] is a little cumbersome, so I'm going to refuse it, but *you'll be able to critique the issue instruction that the Plaintiff will present tomorrow*.
>
> [DEFENSE COUNSEL]: Understood.
>
> THE COURT: That's instruction number 27. Same with instruction number 28. Same with instruction 29. Same with instruction number 30. I'm going to refuse again— counsel, *I'm refusing these at this time*, *but all of this is contingent on what issue instruction is provided the Court. So if you don't believe these are addressed in the issue instructions, you can bring it back up*.

[DEFENSE COUNSEL]: Thank you, Your Honor." (Emphases added.)

¶ 35    It is fundamental that a party must object to a proposed jury instruction to preserve its right to challenge it on appeal. See *id.* As our supreme court has explained, the forfeiture rule in this context promotes judicial economy and fundamental fairness—its purposes are to "ensure that the trial court has the opportunity to correct a defective instruction and to prevent the challenging party from gaining an unfair advantage by failing to act when the trial court could remedy the faulty instruction and then obtaining a reversal on appeal." *Id.* at 557-58; see *People v. Roberts*, 75 Ill. 2d 1, 11 (1979); *People v. Wilson*, 2017 IL App (1st) 143183, ¶ 22; *People v. Banks*, 2016 IL App (1st) 131009, ¶ 71; *Majcher v. Laurel Motors, Inc.*, 287 Ill. App. 3d 719, 735 (1997); *Dean v. Keith's & Ralph's Tavern, Inc.*, 25 Ill. App. 3d 970, 972 (1975).

¶ 36    Here, while Finn may be overstating it when he claims that defendants "agreed" to the revised instructions submitted on the day of trial, the record provides no indication that defendants objected to that final set of instructions, though invited to do so by the trial court. As noted above, we lack a transcript of proceedings, so we cannot know for certain what defendants did or did not say about these final set of instructions. We would note that defendants, on appeal, never actually come out and say that they *did* object; they point to their previous objections to earlier versions of the instructions only.

¶ 37    But the more important point is that as the appellants here, defendants carry the burden of providing a complete record on appeal to support their legal arguments; all doubt arising from an incomplete record is resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). We are left only with the agreed statement of facts, which says merely this about the final set of jury instructions: "Following the November 29, 2021 arguments on motions *in limine* and jury instructions, jury selection proceeded on November 30, 2021." And at the close of trial:

"The court instructed the jury. The court then sent [the] jury off to begin deliberation."

¶ 38    Defendants have given us no basis in the record to find that they timely objected to the final set of jury instructions. We obviously cannot merely assume that they did; to the contrary, given the burden on the appellants here, we must assume the opposite. If, as we must assume, defendants did not object, then the trial court had no reason to believe that defendants had any issue with the revised jury instructions proffered by Finn on the first day of trial. We must honor the forfeiture here and reject defendants' challenge to the jury instructions.

¶ 39                                                    II

¶ 40    We now turn to the court's granting of relief to Finn under the equitable theory of *quantum meruit* after determining that Finn's Wage Act claim failed for lack of a contract or agreement. The record alternatively shows an award for unjust enrichment and *quantum meruit*; on appeal, the parties settle on *quantum meruit* as the remedy. As the particular form of quasi-contractual relief is not relevant to the outcome, we will use the parties' preference for *quantum meruit*.

¶ 41    The critical and undisputed facts animating this question are that Finn never pleaded a cause of action for *quantum meruit* in his complaint, nor did he seek leave to so amend his complaint to do so. That is to say, Finn maintained his Wage Act claim, insisting that he had a valid contract with defendants, throughout this action—even after the close of proof, when he sought to amend his complaint *not* to add an alternative equitable claim like *quantum meruit* but to specify additional damages for his Wage Act claim based on the trial evidence. The court eventually determined that no valid contract existed between the parties, which was fatal to his Wage Act claim, as that claim requires an employment contract or agreement. See *Majmudar v. House of Spices (India), Inc.*, 2013 IL App (1st) 130292, ¶ 11; 820 ILCS 115/1 *et seq.* (West

2012). But the court proceeded to rule that Finn was entitled to recovery under a theory of *quantum meruit* for the value of the services he performed.

¶ 42　We are thus required to answer this question: May a plaintiff recover under a cause of action that he never pleaded in his complaint at any time, even after the close of proof? The answer, we believe, is a resounding no. The only surprise here is that this answer is even remotely controversial.

¶ 43　In 1965, after two iterations of our codified civil practice laws were enacted (first in 1934, then amended in 1956), this court wrote: "The plaintiff's case must stand or fall upon the fraud and deceit charged. The issues in this litigation, as in all cases, are determined from the pleadings and evidence; and an issue cannot be sustained by evidence, absent a corresponding pleading, or by a pleading, without supporting evidence." *Broberg v. Mann*, 66 Ill. App. 2d 134, 137 (1965). We elaborated:

> "It is a fundamental rule, with no exceptions, that a party must recover, if at all, on and according to the case he has made for himself by his pleadings. He cannot make one case by his averments, and have judgment on another and different ground, even though the latter is established by the proof." (Internal quotation marks omitted.) *Id.* at 137-38.

¶ 44　This rule is so deeply entrenched that it has made its way into notable Illinois civil-practice treaties. See *Stanley Magic-Door, Inc. v. City of Chicago*, 104 Ill. App. 3d 380, 385 (1982) (" '[I]ssues in a case are formed by the pleadings and allegations, and the proof must correspond to such. A plaintiff may recover only on the case made in his complaint. He cannot make one case by his allegations and recover on a different case made by the proof.' " (quoting 2 Clark A. Nichols, Illinois Civil Practice § 874, at 89 (1979))).

¶ 45　We say much the same—even literally the same thing—today:

> " 'The issues in any litigation are determined by the pleadings and an issue cannot be sustained by evidence absent a corresponding pleading. [Citation.] It is a fundamental rule, with no exceptions, that a party must recover, if at all, on and according to the case he has made for himself by his pleadings. He cannot make one case by his averments, and have judgment on another and different ground, even though the latter is established by the proof. [Citation.] [A] party cannot plead one cause of action in its complaint and receive judgment on the basis of a different cause of action.' " *Wheeler Financial, Inc. v. Law Bulletin Publishing Co.*, 2018 IL App (1st) 171495, ¶ 74 (quoting *In re Estate of Bontkowski*, 337 Ill. App. 3d 72, 77 (2003)).

See also *Lindblad v. Nelson*, 2019 IL App (1st) 181205, ¶ 24 (" 'A plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in his complaint.' [Citation.] *** 'If the defendant is entitled to judgment as a matter of law on the claims as pled by the plaintiff, the motion will be granted without regard to the presence of evidentiary material which might create a right of recovery against the moving defendant on some unpled claim or theory.' " (quoting *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 911 (1994))).

¶ 46    In *Wheeler*, 2018 IL App (1st) 171495, ¶ 75, the plaintiff pleaded the existence of an oral contract or alternatively an implied contract. But at trial, the plaintiff insisted that it had established a *written* contract and sought a directed verdict in its favor. *Id.* The plaintiff appealed the denial of its motion for directed verdict; this court held that the plaintiff could not recover on a theory it did not plead. *Id.* Likewise, in *Bontkowski*, 337 Ill. App. 3d at 77, an estate action challenging the conveyance of real property, the court invalidated the deed based on theories of fiduciary relationship and undue influence, neither of which the estate had pleaded. We held that "the circuit court erred in setting aside the *** deed on the grounds of fiduciary relationship and

undue influence where such theories were not pled." *Id.* at 78.

¶ 47     In *Pagano*, 257 Ill. App. 3d at 911, the plaintiff challenged the entry of summary judgment on her negligence claim, arguing that the evidence showed that the defendant maintained its property in an unsafe condition. We affirmed, noting that

> "the plaintiff never alleged in his complaint that [the defendant] was in any way negligent in the manner in which it maintained its property or that any condition upon the property caused the injuries for which he sought recovery. A plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in his complaint. The very purpose of a complaint is to advise the defendant of the claim it is called upon to meet." *Id.*

¶ 48     The presence of evidence supporting an unpleaded theory was of no moment; other than attempting to amend the complaint after-the-fact, which the plaintiff did not do, "the plaintiff will not be heard to complain that summary judgment was inappropriately granted because of the existence of evidence supporting a theory of recovery that he never pled in his complaint." *Id.*

¶ 49     Again, this strikes us as uncontroversial. To be sure, Illinois is generous in its pleading rules. We liberally permit amendments to the complaint, even after trial to conform to the proof. See 735 ILCS 5/2-616(a) (West 2020); *Holloway v. Chicago Heart & Vascular Consultants, Ltd.*, 2017 IL App (1st) 160315, ¶ 31 (" 'courts are encouraged to freely and liberally allow the amendment of pleadings' " (quoting *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 467 (1992))). And we allow pleading in the alternative when a plaintiff has multiple claims that are contradictory. See 735 ILCS 5/2-613(b) (West 2020). In fact, the alternative pleading of a breach-of-contract claim along with a quasi-contractual theory like *quantum meruit* is all but routine, even though the claims are mutually exclusive. See, *e.g.*, *Guinn v. Hoskins Chevrolet*,

361 Ill. App. 3d 575, 604 (2005); *Stephen L. Winternitz, Inc. v. National Bank of Monmouth*, 289 Ill. App. 3d 753, 759 (1997).

¶ 50     Indeed, it is precisely because of these liberal rules—the ability to freely amend and, in particular, to plead in the alternative—that it is only fair to require a plaintiff to plead any possibly applicable causes of action in the complaint. A plaintiff loses nothing by pleading in the alternative; until trial, when the proof will show that one theory or the other (or perhaps neither) carries the day, the plaintiff maintains both options—but the defendant, at a minimum, is on notice of each theory and can prepare a defense accordingly.

¶ 51     Here, to bring the point home, Finn easily could have pleaded a quasi-contractual theory in the alternative to his Wage Act claim, if he had reason to fear that he could not prove the existence of a valid contract. But had he done so, defendants here could have prepared a defense for a claim of *quantum meruit* or unjust enrichment or the like. Instead, defendants went to trial focusing only on a Wage Act claim, choosing the (successful) strategy of attacking one particular element of that claim—the existence of an employment contract or agreement. They had no reason to prepare for an equitable, quasi-contractual claim, because over the six years this lawsuit pended, Finn never once pleaded one.

¶ 52     And if Finn had *tried* to plead a *quantum meruit* claim at the midnight hour—either on the eve of trial or even at the close of proof—at least defendants would have had the opportunity to resist that effort, to argue that leave to amend should be denied under the familiar *Loyola Academy* factors. See *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). Perhaps defendants would have asked to reopen the proof if Finn were permitted to raise a new cause of action at such a late juncture. But the bottom line is that each party could have had their say before the court ruled.

¶ 53 Here, however, the court essentially converted a statutory legal claim—a Wage Act claim—into an equitable quasi-contractual claim without any notice whatsoever to defendants. Defendants had no chance to defend that claim at trial, nor were they given the chance to argue in advance against converting that claim via an amendment to the pleadings.

¶ 54 It would seem obvious, then, that the court erred, just as the court erred in *Wheeler* and in *Bontkowski*, by granting Finn relief based on a cause of action he did not plead. We have repeatedly stated over the years that limiting plaintiffs' recovery to the causes of action they plead is "a fundamental rule, with no exceptions." (Internal quotation marks omitted.) *Wheeler*, 2018 IL App (1st) 171495, ¶ 74; *Bontkowski*, 337 Ill. App. 3d at 77; *Broberg*, 66 Ill. App. 2d at 137-38; *Seaburg v. Williams*, 23 Ill. App. 2d 25, 30 (1959); *Fornoff v. Smith*, 281 Ill. App. 232, 236 (1935).

¶ 55 But the answer here is not so obvious, as a body of case law—almost all from the last century—has observed or held, without analysis or commentary, that a plaintiff prosecuting a breach-of-contract action may nevertheless be entitled to *quantum meruit* relief without amending the complaint to plead that cause of action. See *In re Marriage of Pavlovich*, 2019 IL App (1st) 180783, ¶ 31; *Edens*, 87 Ill. App. 3d at 485; *Slater v. Jacobs*, 56 Ill. App. 3d 636, 638 (1977); *Nardi & Co. v. Allabastro*, 20 Ill. App. 3d 323, 327-28 (1974). The circuit court here, for example, cited *Edens* in granting relief to Finn on an unpleaded *quantum meruit* claim.

¶ 56 The source of this appellate case law is the 1937 supreme court decision of *Moreen v. Estate of Carlson*, 365 Ill. 482 (1937), which does appear to support the proposition that a plaintiff who pleads a common-law contract action that ultimately fails may recover *quantum meruit* damages without amending her complaint. The cases cited above followed *Moreen* or its progeny without any further analysis, despite the many changes in our Code of Civil Procedure

over the years. As all roads lead to *Moreen*, and we are bound by that decision if applicable, no matter its age, a close analysis of that decision is in order.

¶ 57   In *Moreen*, the plaintiff filed a claim in probate court against the decedent's estate, claiming that she and the decedent had entered into a contract whereby, in exchange for the plaintiff caring for the decedent, the decedent would bequeath his estate to her upon his death. *Id.* at 483. The trial court found that no valid contract was formed, but the plaintiff was entitled to *quantum meruit* damages. *Id.* The appellate court reversed that award of damages for two reasons—there was no evidence submitted of the value of the plaintiff's services, and the plaintiff had not pleaded a cause of action for *quantum meruit*, only one for breach of contact. *Id.* at 494; see *In re Estate of Carlson*, 286 Ill. App. 81, 90 (1936).

¶ 58   The supreme court held that it was proper to permit *quantum meruit* damages in this context. *Moreen*, 365 Ill. at 493. The court did not squarely address the fact that the plaintiff had not pleaded *quantum meruit* as an alternative cause of action; the court wrote only this one sentence on the entire topic: "In *Anderson v. Biesman & Carrick Co.* [citation], (decided since the rendition of its opinion in the present case,) the same division of the Appellate Court has reached a like conclusion supported by subdivision three of section 33 and section 42 of the Civil Practice act." *Id.*

¶ 59   As the supreme court correctly noted, the earlier appellate decision of *Anderson v. Biesman & Carrick Co.*, 287 Ill. App. 507, 511-12 (1936), held that a plaintiff raising a common-law contract claim may obtain *quantum meruit* damages without pleading that claim if the contract is found to be unenforceable. In *Anderson*, however, the plaintiff had claimed at trial that he was seeking *quantum meruit* damages in addition to a claim of breach of contract, telling the judge that " '[m]y statement of claim is not predicated on the contract alone, but on a

reasonable amount. I am suing on two theories ... I can't show then the reasonable value?' " *Id.* at 509-10. The trial court ruled that the plaintiff had only technically pleaded a contract claim and ultimately disregarded any evidence relating to *quantum meruit*, even though the defendant amended its answer to respond to that quasi-contract claim. *Id.* at 510.

¶ 60    The appellate court reversed, relying on the new Civil Practice Act that had taken effect in 1934—the first time Illinois had ever codified civil procedure—and in particular two provisions of that law. First, section 33 provided in part that " '[p]leadings shall be liberally construed with a view to doing substantial justice between the parties.' " *Id.* at 512 (quoting Ill. Rev. Stat. 1935, ch. 110, ¶ 161). Second, section 42 of that 1934 law provided that " '[n]o pleading shall be deemed bad in substance which shall contain such information as shall reasonably inform the opposite party of the nature of the claim or defense which he is called upon to meet.' " *Id.* (quoting Ill. Rev. Stat. 1935, ch. 110, ¶ 170).

¶ 61    Relying on these provisions, the appellate court reasoned "that by plaintiff's statement of claim the defendant was reasonably informed in the matter as to plaintiff's position and the evidence which would be brought forward in support thereof." *Id.* The court thus reversed and remanded for a new trial on *quantum meruit* damages. *Id.*

¶ 62    So *Anderson* is a decision where the plaintiff made clear during the trial that he was pursuing a *quantum meruit* claim as well as a contract claim, and the defendant clearly understood as such and even responded to that claim in its answer (what was then known as a "statement of defense"). *Anderson* came down to a debate over the technicalities of the pleadings, notwithstanding that all parties were fully on notice, whereas in *Moreen*, from what we can gather, the plaintiff had never so much as mentioned a *quantum meruit* claim while prosecuting her contract action. It is a bit curious, then, that the supreme court in *Moreen* would

rely so heavily on *Anderson* given this fairly significant difference in the facts.

¶ 63    Regardless, it is not our place to disagree with a supreme court decision. If the decision in *Moreen* is controlling, as Finn here argues, we are obviously bound by it. For two reasons, however, we do not consider ourselves bound by *Moreen*.

¶ 64    First, to the extent that *Moreen* remains viable nearly a century later, it stands as the only exception to the rule that, before a plaintiff may recover under a cause of action, it must plead that cause of action in its complaint—what we have previously deemed "a fundamental rule, with no exceptions." (Internal quotation marks omitted.) *Wheeler*, 2018 IL App (1st) 171495, ¶ 74; *Bontkowski*, 337 Ill. App. 3d at 77. A defendant is entitled, at a bare minimum, to know what claims it must defend. We have already cited a body of decisions for this modern view of pleadings. See *Lindblad*, 2019 IL App (1st) 181205, ¶ 24; *Wheeler*, 2018 IL App (1st) 171495, ¶ 74; *Bontkowski*, 337 Ill. App. 3d at 77; *Pagano*, 257 Ill. App. 3d at 911; *Stanley Magic-Door*, 104 Ill. App. 3d at 385; *Broberg*, 66 Ill. App. 2d at 137-38. We could cite countless more.

¶ 65    So we will certainly not extend this exception beyond the holding of *Moreen*, and we take our cue from another court that recently followed this same route. In *Pavlovich*, 2019 IL App (1st) 180783, ¶ 3, a marital dissolution case, a law firm (H&B) sought attorney fees from its client, Aneta. The trial court denied the fee petition because H&B did not have a written agreement for legal services with Anita as required by section 508 of the Illinois Marriage and Dissolution of Marriage Act. H&B then argued that, failing a written contract, it was entitled to fees as *quantum meruit*. *Id.* ¶¶ 9-12.

¶ 66    We agreed with the trial court that section 508 required a written contract. *Id.* ¶ 23. We refused to allow H&B to bootstrap a *quantum meruit* claim onto its case without ever having pleaded it, even after recognizing the *Edens* decision from 1980, part of the *Moreen* progeny:

"We recognize that, where a party brings a common-law claim for breach of contract and is unable to prove the existence of the contract, he is entitled to proceed under a theory of *quantum meruit* without amending his pleadings. See *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* [citation]. Here, H&B did not bring a common-law action for breach of contract. Rather, it brought a fee petition under the very specific provisions of section 508 of the Act, despite the very clear limitations in the language of section 508 and despite the option of instituting an independent action for common-law *quantum meruit* without such limitations." *Id.* ¶ 31.

¶ 67 Likewise, here, Finn did not institute a common-law action for breach of contract. Instead, Finn filed a statutory claim under the Wage Act. True, the Wage Act requires a valid contract or at least an agreement, much like section 508 of the marriage statute, but it remains a claim based on a statute, not the common law. Nothing stopped Finn from raising common-law actions of either breach of contract, *quantum meruit*, or both. We agree with *Pavlovich* that the *Moreen* decision is inapplicable to a statutory claim and decline to extend *Moreen* to these facts.

¶ 68 Second, we agree with the recent observation of a sister appellate court that "a careful review of the evolution of the Illinois Civil Practice Act suggests that this holding in *Moreen* and its progeny may be at odds with the current iteration of the Act." *Roberson Construction, LLC v. Ellerby*, 2021 IL App (2d) 191095-U, ¶ 95. Albeit in *dicta*, the court in *Roberson* noted that, at the time *Moreen* was handed down, "the revolutionary 1933 Civil Practice Act had just become effective, whereby substantial aspects of the common law were replaced by statute." *Id.* ¶ 97.

¶ 69 And while this new law required litigants to plead separate causes of action for the first time and allowed them to plead in the alternative, the "former chancery practice of including a general prayer for relief still persisted despite the effort to abolish it." *Id.* ¶ 98 (citing *Civil*

*Practice and Procedure–Survey of Illinois Law for the Year 1947-1948*, 27 Chi.-Kent L. Rev. 24, 32 (1948)). So when the legislature redrafted the civil practice laws in the mid-1950s, it went to some lengths to emphasize that a plaintiff need not fear pleading inconsistent alternative theories in a complaint:

> "In 1956, the Illinois Legislature enacted another overhaul of the Civil Practice Act. [Citation.] Section § 43 of the Act was amended to read, 'When a party is in doubt as to which of two or more statements of fact is true, he may, *regardless of consistency*, state them in the alternative or hypothetically in the same or different counts or defenses, whether legal or equitable.' (Emphasis added.) *Id.* § 43(2). The drafters of the 1956 Act stated in the Joint Committee Comments that the words 'regardless of consistency' were inserted to make clear 'that alternative pleading of facts is sanctioned in spite of inconsistencies, removing any doubt in that regard under the present act.' *Id.*, Joint Committee Comments, at 514." *Id.*

¶ 70   The court then noted that the current iteration of the Code of Civil Procedure retains this language about pleading in the alternative, even if theories are incompatible with one another, as well as the requirement that each cause of action be pleaded in a separate count. *Id.* ¶ 99; see 735 ILCS 5/2-603(b) (West 2020) ("Each separate cause of action upon which a separate recovery might be had shall be stated in a separate count ***."); 735 ILCS 5/2-613(b) (West 2020) ("When a party is in doubt as to which of two or more statements of fact is true, he or she may, regardless of consistency, state them in the alternative or hypothetically in the same or different counts or defenses.").

¶ 71   As we noted earlier, the ability to plead inconsistent theories in separate counts (or even the same count), which first appeared explicitly in the civil practice laws in 1956, is the principal

reason why no plaintiff should ever be excused from pleading whatever cause of action may be potentially applicable. If a plaintiff were required to choose between suing under an express contract and seeking equitable quasi-contractual relief, we might understand the desire to excuse a pleading deficiency, but the availability of alternative, inconsistent pleading removes that concern entirely. Indeed, our supreme court has repeatedly emphasized the availability of alternative, inconsistent pleading. See, *e.g.*, *McQueen v. Green*, 2022 IL 126666, ¶ 43 (" 'Illinois law unquestionably allows litigants to plead alternative grounds for recovery *** as long as the alternative factual statements are made in good faith ***.' " (quoting *Heastie v. Roberts*, 226 Ill. 2d 515, 557-58 (2007))).

¶ 72 We agree with the court in *Roberson* that the *Moreen* decision may no longer be applicable in light of the modern changes to our civil practice laws that were not present at the time the supreme court rendered its 1937 decision. And we find it highly unlikely that the supreme court would agree with the outcome of *Moreen* today, nearly a century later, under the current version of the Code of Civil Procedure.

¶ 73 In any event, as we find *Moreen* distinguishable, we need not decide the viability of that decision under the current civil practice laws. For the reasons we have given, the trial court erred in granting *sua sponte* relief under the unpleaded claim of *quantum meruit*. We reverse that award of damages.

¶ 74 CONCLUSION

¶ 75 We affirm the circuit court's order entering judgment on the defamation jury verdict and reverse its award of *quantum meruit* damages.

¶ 76 Affirmed in part and reversed in part.

*Finn v. Project Resource Solutions, LLC*, 2024 IL App (1st) 221016

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 15-L-11963, 16-CH-165; the Hon. Diane Shelley and the Hon. Thomas Donnelly, Judge, presiding. |
| **Attorneys for Appellant:** | Michael A. Munson, of Chicago, and Grant O. Jaskulski, of Hewson & Van Hellemont, P.C., of Oak Park, Michigan, for appellants. |
| **Attorneys for Appellee:** | Laurie E. Leader, of Law Offices of Laurie E. Leader, LLC, of Lincolnshire, and Michael Lee Tinaglia, of Law Offices of Michael Lee Tinaglia, Ltd., of Park Ridge, for appellees. |